790 P.2d 379

**Kerin R. McGILL, Plaintiff–Appellant,**

v.

**Connie FRASURE, Defendant,**

**and**

**Dayton R. Guidinger and Doreen M. Guidinger, husband and wife, dba Garfield's, Defendants–Respondents.**

**Kerin R. McGILL, Plaintiff–Respondent,**

v.

**Connie FRASURE, Defendant,**

**and**

**Dayton R. Guidinger and Doreen M. Guidinger, husband and wife, dba Garfield's, Defendants–Appellants.**

**Nos. 16967, 17138.**

Court of Appeals of Idaho.

April 5, 1990.

Stephen A. Meikle, Idaho Falls, for plaintiff-appellant, McGill.

Merrill & Merrill, Pocatello, for defendants-respondents, the Guidingers. Kim B. Loveland, argued.

PER CURIAM.

We have been assigned two appeals arising out of events which occurred in a Pocatello bar called "Garfield's," owned by Dayton R. and Doreen Guidinger (hereinafter Guidinger). In January of 1985, while attending a "Ladies Night" at the bar, Kerin McGill was physically assaulted by another customer, Connie Frasure. McGill received injuries from the assault, including bruises and facial lacerations. McGill sued Frasure and Guidinger for damages resulting from the assault. McGill alleged that Guidinger negligently failed in his duty as a business owner to use reasonable care for her protection. At trial, Guidinger moved for and was granted a directed verdict. The jury ultimately returned a verdict in favor of McGill against Frasure with a damage award totaling $16,300. McGill has appealed, contending the trial court erred in directing a verdict in favor of Guidinger. Guidinger appeals from a separate order of the district court denying Guidinger's motion for attorney fees. We

reverse the order for a directed verdict and remand the case for a new trial.

### Order Granting Directed Verdict

At the trial, McGill attempted to establish that Frasure's violent propensity was known to Guidinger, either personally or by the imputed knowledge of his employees. McGill proffered evidence regarding an alleged earlier altercation in Garfield's which had occurred approximately one week before the assault on McGill and which supposedly had resulted in the ejection of Frasure from the bar. This evidence consisted of statements by a bouncer employed at Garfield's and by an acquaintance of McGill who was present when Frasure assaulted McGill. Shortly after the assault, the bouncer, Cary Neal, informed the acquaintance, Teresa Crist, of Frasure's previous ejection from Garfield's. Crist testified that after the assault she was told by Neal that "he [Neal] was sorry this happened. He said, she [Frasure] had no business being here, she did the same thing to someone else a week ago." Guidinger objected to Crist's testimony as inadmissible hearsay. The court at first sustained the objection but then overruled it after McGill successfully argued that evidence of Neal's statement could come in as an admission by an agent of a party-opponent under I.R.E. 801(d)(2).

McGill also called Neal as a witness to confirm that he had made the statement to Crist and to show the basis for his statement. Neal said that he had not been present at the alleged earlier ejection of Frasure. Neal stated that just after the Frasure–McGill altercation he was told by another Garfield's bouncer, Kevin Chesler, that "[she (Frasure) had] been kicked out the week before." Guidinger objected to this testimony on the ground that an insufficient foundation for its admission had been presented. After further questioning of Neal, the court sustained the objection and struck the testimony. The court at this time also struck from the record the earlier testimony by Crist.

Before the court made these rulings, Guidinger's attorney informed the court that Chesler had been subpoenaed and would be present later in the day. The court said that McGill's counsel could cross-examine Chesler about the purported statement he had made in Neal's presence. The court suggested that Neal and Crist could be called later to impeach Chesler if Chesler denied making the statement. McGill's counsel then said he would have Chesler testify as part of McGill's case, knowing that he expected Chesler to say—as he had in a deposition—that he did not remember the contents of any post-fight conversation with Neal.

McGill did call Chesler to testify. He denied having made any statements to Neal about Frasure. He also denied ever having problems with Frasure at Garfield's. Following this testimony, both Crist and Neal were recalled by McGill. The court then told the jury the testimony of Crist and Neal would be allowed for impeachment and could be considered for that limited purpose. Crist reiterated her statement regarding what Neal told her the night McGill was assaulted. Neal also repeated his previous testimony on what Chesler allegedly had told him. Then, before resting her case, McGill made an offer of proof concerning testimony she wanted to present from Frasure's mother about previous altercations involving Frasure. The court rejected this offer of proof and granted Guidinger's motion for a directed verdict.

■ An appeal from a directed verdict presents a question of law on which the appellate court exercises free review. In determining whether the directed verdict should have been granted, this Court applies the same standard as did the trial court which passed on the motion originally. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). On a motion for a directed verdict, pursuant to I.R.C.P. 50(a), the moving party admits the truth of the adverse evidence and every legitimate inference that can be drawn therefrom. *Verway v. Blincoe Packing Co., Inc.*, 108 Idaho 315, 698 P.2d 377 (Ct.App.1985). In ruling on the motion, the question is whether there is substantial evidence to justify

submitting the case to the jury. *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984). This question is not whether there is literally no evidence supporting the party against whom the motion is made, but whether there is evidence of sufficient quantity and probative value that reasonable minds *could* have concluded a verdict in favor of the non-moving party was proper. *Quick v. Crane, supra; Elce v. State,* 110 Idaho 361, 716 P.2d 505 (1986); *Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 518 P.2d 1194 (1974); *Ortiz v. State Dept. of Health & Welfare,* 113 Idaho 682, 747 P.2d 91 (Ct.App.1987).

Our research has yielded no direct Idaho precedent concerning the duty a tavernkeeper owes his patrons to protect them from criminal assaults or intentional misconduct by third parties. Numerous courts in other jurisdictions have ruled on this issue and have determined that while not an insurer of safety of his patrons, the tavernkeeper owes them a duty to exercise reasonable care to protect them from reasonably foreseeable injury at the hands of other patrons. Annot., *Tavernkeeper—Patron Assault* 43 A.L.R.4th 281 (1986). This is also in accord with the principles enunciated in the RESTATEMENT (SECOND) OF TORTS §§ 314A, 344 (1965).

Thus, to establish liability of the tavernkeeper it must be shown that the risk of harm was foreseeable. McGill argued to the trial court that this foreseeability requirement was satisfied by a showing that Guidinger knew or should have known of the dangerous propensity of a particular patron, namely Frasure. This specific knowledge standard is taken from a test set out in *Nevin v. Carlasco,* 139 Mont. 512, 365 P.2d 637 (1961). A majority of jurisdictions accept this method of proving foreseeability. It has also been held that specific knowledge of an individual's dangerous propensity does not provide the sole method of proving foreseeability. Instead, foreseeability "can be shown by proving that, based on past experience, a proprietor knew of or should have recognized the likelihood of disorderly conduct by third persons in general which might endanger the safety of the proprietor's patrons."

*Allen v. Babrab, Inc.,* 438 So.2d 356, 357 (Fla.1983). Language in § 344 of the SECOND RESTATEMENT would also indicate this knowledge of third persons in general may suffice. Nevertheless, we are concerned here only with whether the tavernkeeper knew or should have known of Frasure's allegedly dangerous propensity.

In granting the directed verdict, the trial court concluded that the only evidence indicating Guidinger's negligence was the disputed testimony by which McGill attempted to establish that Guidinger, through his employees, had prior knowledge of Frasure's propensity for violence. We agree with the trial court that McGill produced no other evidence upon which a jury could find that Guidinger failed in any duty to protect patrons, specifically Kerin McGill, from foreseeable harm. The only evidence presented regarding Guidinger's knowledge of Frasure's propensity for violence was the testimony admitted for the limited purpose of impeachment. The court stated that even if such testimony was considered for general purposes, when balanced against other evidence presented, it was still insufficient to justify submitting the case to the jury.

McGill argues the judge erred in ruling that Neal's and Crist's testimony could be considered only for the purpose of impeaching the witness Chesler after he denied making the statement about Frasure's involvement in a prior incident at Garfield's. McGill also argues that other evidence regarding Frasure's habit, character and reputation for fighting was improperly excluded. We will address this latter argument first.

### A

McGill wanted to prove—through testimony by Frasure's mother—that Frasure that been involved in other assaultive behavior at different times before the incident at Garfield's. Some of this testimony had hearsay problems and none of it helped establish the requisite foreseeability. Evidence of Frasure's proclivity to engage in violent behavior would have been important

for purposes of foreseeability of harm to McGill only if it could be linked either to Guidinger's knowledge of this proclivity or to the conduct of Garfield's patrons in general. This was not shown in McGill's offer of proof. Instead, the evidence entailed alleged incidents involving Frasure ranging as far back as four years before the assault at Garfield's. McGill argues that this evidence was offered to show Frasure's "habit" of assaulting third parties. Even if this evidence was allowed, we do not perceive how the jury could have found from it that Guidinger should have foreseen the risk of harm to McGill. The offer of proof failed to disclose how Guidinger and their employees knew or should have known of the incidents related by Frasure's mother. We hold that the trial judge did not err in excluding the mother's testimony in the plaintiff's case against Guidinger.

**B**

We now turn to the question of whether Neal's testimony should have been admitted as proof that Guidinger knew or should have known of Frasure's propensity for violence.

**1**

■ As noted above, defense counsel objected to Neal's testimony about Chesler's statement. Counsel argued that the testimony was hearsay and that it was not supported by a showing that Chesler had personal knowledge of the matter stated. With respect to the hearsay question, employee Neal's testimony as to what employee Chesler told him, and Teresa Crist's testimony as to what employee Neal told her, were both allowable as party admissions under I.R.E. 801(d)(2). Specifically, each employee's statement was "a statement by [Guidinger's] ... servant concerning a matter within the scope of his ... employment, made during the existence of the relationship...." I.R.E. 801(d)(2)(D). Therefore, the hearsay objection was illfounded. *See Jolley v. Clay*, 103 Idaho 171, 646 P.2d 413 (1982).

Regarding the personal knowledge objection, it must be remembered that Chesler's

admission was relevant primarily to show his awareness of Frasure's propensity for violence. It was relevant secondarily to show, by circumstantial evidence, that there had been a prior incident in which Frasure was ejected from the bar. As to the primary issue of awareness, Chesler clearly had personal knowledge of the matter admitted. By definition, he had personal knowledge of the awareness he exhibited by making the statement to Neal. Such awareness is the key issue in this case; it is awareness of a risk that gives rise to a duty to exercise reasonable care.

■ But even if our inquiry were broadened to include the secondary issue of whether Frasure actually was ejected from the bar a week earlier, Chesler's admission still was admissible evidence. The courts generally have held that personal knowledge of an admitted fact is not necessary in order for an *admission* to be received in evidence. (*See generally* McCORMICK ON EVIDENCE, § 263 at 778-79 (3rd ed. 1984) *and Mahlandt v. Wild Canid Survival & Research Center, Inc.*, 588 F.2d 626 (8th Cir.1978) (construing federal version of I.R.E. 801(d)(2)(D)).

In the case before us, Neal's and Crist's statements were admitted for impeachment only after Chesler denied having any knowledge about a prior incident at Garfield's. McGill was forced to take this round-about approach because of the trial court's interpretation of I.R.E. 801. However, we hold that McGill should have been permitted to present direct evidence of Chesler's statement through Neal's testimony as to what Chesler said after the Frasure–McGill incident. The admissibility of Chesler's statement, as recounted in Neal's testimony, was not contingent upon a showing that Chesler had personal knowledge that Frasure had been ejected a week earlier for fighting.

**2**

The next question is whether Neal's testimony as to Chesler's statement is sufficient evidence to create a triable issue for the jury. The district judge ordered a directed verdict for the tavern owners, with

the following explanation: "[A]s I *balance that [evidence of the employee's statement] against all of the other evidence* on that particular issue in this case, there's just not enough evidence there to warrant this case going to the jury...." [Emphasis added.][1] To some members of this Court this language suggests that the district judge impermissibly weighed the evidence when he ruled on Guidinger's motion for directed verdict. Of course, the district judge's limited and proper task should have been simply to determine whether McGill had adduced substantial evidence that Guidinger, through his employee Chesler, was aware of Frasure's propensity for violence.

We said in *Ortiz v. State Dept. of Health & Welfare,* 113 Idaho 682, 684, 747 P.2d 91, 93 (Ct.App.1987):

> We regard evidence as "substantial" if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. IDAHO APPELLATE HANDBOOK §§ 3.3.1 and 3.3.2.2 (Idaho Law Foundation, Inc., 1985).

In Idaho, out-of-court admissions by a party or a party's agent have been held to be substantial evidence in the following cases: *Silver Syndicate, Inc. v. Sunshine Mining Company,* 101 Idaho 226, 611 P.2d 1011 (1979); *Daniels v. Anderson,* 113 Idaho 838, 748 P.2d 829 (Ct.App.1988) (review denied); *Price v. Aztec Limited, Inc.,* 108 Idaho 674, 701 P.2d 294 (Ct.App.1985). In *Jephson v. Ambuel,* 93 Idaho 790, 473 P.2d 932 (1970), the Supreme Court held that out-of-court admissions by a party defendant in a personal injury suit were not sufficient to raise a material issue of fact about defendant's negligence. In none of these cases are the facts similar to the present case.

The courts are divided on whether an out-of-court admission, unaccompanied by a showing of personal knowledge, is sufficient to take a case to a jury. *See generally* Annot., *Admission—Tort During Absence,* 54 A.L.R.2d 1069 § 8 (1957). Most decisions appear to hold the evidence sufficient, but each case turns on its own facts.

We take the following view of the admissible evidence against the tavern owners, keeping in mind that for the purpose of the directed verdict motion, the testimony of any witness adverse to the tavern owners must be taken as true and all legitimate inferences must be drawn in favor of the non-moving party. Neal did make a statement to Crist shortly after the Frasure–McGill altercation. The statement was made while Neal was employed as a bouncer at Garfield's. The statement shows an awareness by Neal then that Frasure had been a troublemaker at Garfield's previously. Nevertheless, Neal's undisputed testimony at trial showed that he was only repeating what he had just heard from another bouncer, Chesler. Neal had no previous knowledge or aware-

---

**1.** When the trial court made this ruling, the Guidingers had both testified. Their bouncer Chesler had testified, as had Connie Frasure. All of these witnesses stated that Frasure was not involved in any prior incidents at Garfield's. Even Neal, who was no longer a bouncer at Garfield's, testified that he had no personal knowledge of any such incidents. The trial court had only Neal's testimony that Chesler had spoken of an earlier incident to "balance" against all of these denials. Accordingly, we can understand how the trial judge might have thought the evidence supporting the McGill's case was not "substantial;" but, as we have said, a motion for directed verdict presents no occasion to weigh the evidence.

We recognize that the decisions of some state courts support the trial judge's ruling. Missouri, for example, has consistently held that where the plaintiff's proof consists solely of a purported admission made out of court, which admission is denied by the declarant under oath at trial, the evidence is not sufficient to create an issue for the jury. *Phillips v. Lively,* 708 S.W.2d 369 (Mo.App.1986); *Adelsberger v. Sheehy,* 332 Mo. 954, 59 S.W.2d 644 (1933). *Accord Potter v. Robinson,* 233 Iowa 479, 9 N.W.2d 457, 462 (1943) (evidence of an admission, which was denied and which was uncorroborated by other evidence, and there is other evidence contrary to the admission, "is insufficient to avoid application of the scintilla of evidence rule").

In our view, however, it is unwise to lay down "bright-line rules" for directed verdicts where the evidence falls into certain categories. Each case must be examined on its own facts. If the evidence offered by the plaintiff is admissible, as we have ruled here, and if it is evidence a jury reasonably *could* believe and rely upon to support a finding, then a directed defense verdict is inappropriate.

ness of Frasure's propensity for violence. Therefore, on the basis of this evidence no prior awareness can be imputed from employee Neal to employer Guidinger.

 Neal's testimony about the statement made to him by Chesler must be viewed differently. Although Chesler later denied telling Neal that Frasure had been ejected for fighting a week earlier, Neal's testimony must be viewed at this juncture as the truth. Therefore, employee Chesler did make the statement, thereby exhibiting his own awareness of Frasure's propensity for violence.

Of course, any credibility issue is for a jury to decide. The question here is, assuming the jury would believe Neal and disbelieve Chesler and the three defendants, could the jury reasonably infer from Chesler's statement to Neal that *before* Frasure came into Garfield's on the night in question at least one employee was aware of her propensity for violence. While the question is a close one, we believe that a jury reasonably could draw such an inference. Accordingly, we reverse the court's order and we remand for a new trial on the limited issue of Guidinger's liability. Our ruling does not disturb the jury's determinations of McGill's damages and Frasure's liability.

### Order Denying Attorney Fees

Following the entry of judgment in his favor, Guidinger sought an award of attorney fees against McGill under I.C. § 12–121. The trial judge denied the request. Guidinger appealed from the postjudgment order, arguing that the judge abused his discretion. We need not reach this question because it is rendered moot by our decision on McGill's appeal. Consequently, the question of attorney fees is left open for reconsideration by the trial court when a prevailing party is finally determined in this case.

In summary, the judgment in favor of Guidinger is vacated. We remand the case for a new trial on McGill's claim against Guidinger for the damages proven in the first trial. Both parties have requested attorney fees on appeal. Neither party has

shown entitlement to an award of fees. *See Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). Costs to McGill.