MASON v ROYAL DEQUINDRE, INC

GOODMAN v FORTNER

Docket Nos. 102755, 103786. Argued March 6, 1997 (Calendar Nos. 16-17). Decided July 29, 1997.

Steven C. Mason brought a dramshop and premises liability action in the Macomb Circuit Court against Royal Dequindre, Inc., seeking damages for injuries sustained when a patron who had been ejected from a bar owned by the defendant beat him in the parking lot of the bar. The court, Lido Bucci, J., directed a verdict for the defendant on the dramshop claim and entered judgment on a jury verdict for the plaintiff on the premises liability claim. The Court of Appeals, CONNOR, P.J., and WAHLS and SAAD, JJ., reversed, holding that the trial court erred in denying the defendant's motion for a directed verdict on the premises liability claim (Docket No. 169106). The plaintiff appeals.

Kenneth L. Goodman brought a premises liability action in the Wayne Circuit Court against Driftwood, Inc., doing business as Bootleggers, for failing to protect him from being shot by Anthony Fortner in its parking lot. The court, Marvin R. Stempien, J., denied the defendant's motion for a directed verdict and entered judgment on a jury verdict for the plaintiff. The Court of Appeals, McDONALD, P.J., and HOEKSTRA, J. (TAYLOR, J., dissenting), affirmed in an unpublished opinion per curiam, agreeing that business invitors are not normally required to protect customers from the criminal acts of others; however, it ruled that merchants may have a duty to eject unruly patrons or summon the police when they know or should know of the presence of such patrons (Docket No. 162803). The defendant appeals.

In an opinion by Justice KELLY, joined by Chief Justice MALLETT, and Justices BRICKLEY, CAVANAGH, and RILEY, the Supreme Court *held*:

Merchants can be liable in tort for failing to take reasonable measures to protect their invitees from harm caused by the criminal acts of third parties. The harm must be foreseeable to an identifiable invitee and preventable by the exercise of reasonable care.

1. Although owners and occupiers of land have a special relationship to their invitees, they are not insurers of their safety and do not have a duty to protect invitees from unreasonable risks that

are unforeseeable. In order for a special-relationship duty to be imposed, the invitee must be readily identifiable as being foreseeably endangered. Merchants may have a common-law duty to protect their patrons from the criminal acts of other patrons where they have or should have knowledge that their patrons are in danger.

2. In *Mason*, Royal Dequindre had no duty to take reasonable measures to protect the plaintiff from attack by another patron. Examined in a light most favorable to plaintiff, the evidence does not establish that it was foreseeable to the defendant that the patron would attack the plaintiff. In *Goodman*, Bootleggers had a duty to take reasonable measures to protect the plaintiff. The defendant knew or should have known that a fight had occurred between the plaintiff and another patron because the plaintiff specifically requested that the bar's bouncers call the police because of it. The bouncers, and therefore the defendant, were on notice that plaintiff, as well as another patron, was in danger. In addition, the harm was foreseeable. A reasonable jury could find that the defendant did not take reasonable steps to prevent the plaintiff's injury.

Justice WEAVER, concurring in the result in *Mason* and dissenting in *Goodman*, stated that, in both cases, the defendants were not required to protect the plaintiffs from the criminal acts of third parties.

The majority's conclusion in *Goodman* that the plaintiff's injury was foreseeable because two previous shootings had recently occurred in the defendant bar's parking lot is without logical foundation. The position is tantamount to saying that almost any injury is foreseeable to an invitee in high-crime, high-risk areas. Owners and occupiers of land do not have a duty to protect invitees from the criminal acts of third parties, absent extraordinary circumstances.

Justice BOYLE, concurring in part and dissenting in part, stated that *Goodman* is an inappropriate vehicle for consideration of whether, and to what extent, a merchant has a general duty to anticipate the criminal acts of third parties. The majority's rationale in *Goodman* appears to extend a merchant's duty to protect an invitee against criminal acts of third parties. Because a tavern keeper has a long-established common-law duty to supervise the premises by using reasonable care to protect patrons from foreseeable injury, it is unnecessary and unwise to either explicitly or implicitly opine in this case regarding a merchant's general duty of care toward invitees. The majority has impermissibly expanded the general rule of nonliability for criminal acts of third parties.

*Mason,* affirmed.
*Goodman,* affirmed.
209 Mich App 514; 531 NW2d 797 (1995) affirmed.

*Ferriby & Houston* (by *Robert L. Ferriby, Jr.,* and *Susan J. Zbikowski*) for plaintiff Mason.

*D. Dennis Dudley* for plaintiff Goodman.

*Kallas & Henk, P.C.* (by *Ted M. Kozerski* and *Scott L. Feuer*), for the defendants.

Amicus Curiae:

*Plunkett & Cooney, P.C.* (by *Jeffrey C. Gerish*), for Michigan Defense Trial Counsel, Inc.

KELLY, J. We granted leave to appeal in these consolidated premises liability cases to determine whether merchants have a common-law duty to protect their patrons from the criminal acts of third parties. We affirm the Court of Appeals decisions in both cases. Our holding is that merchants can be liable in tort for failing to take reasonable measures to protect their invitees from harm caused by the criminal acts of third parties. The harm must be foreseeable to an identifiable invitee and preventable by the exercise of reasonable care.

I

*MASON v ROYAL DEQUINDRE, INC*

Dan Kanka, Jim Fitzgerald, Brian Domier, and plaintiff went to a tractor pull at the Pontiac Silverdome on March 3, 1990. After leaving the Silverdome and stopping briefly at a bar, the men arrived at another bar, Dazzles. The bar is attached to

a bowling lane. Both are owned by defendant Royal
Dequindre, Inc.

After entering, the four men separated. While
Kanka was having a drink, defendant Thomas Geof-
frey and his cousin approached him and renewed an
old argument. Kanka testified that Geoffrey
threatened to kill him. Geoffrey grasped Kanka by the
hair, wrenched his jacket over his head, and began
beating him. Dazzles' employees pulled Geoffrey from
Kanka and ejected him from the bar. They took
Kanka to a locker room at the rear of the bar and
instructed him to wait until Geoffrey left the premises
so as to avoid more conflict.

When the fight between Kanka and Geoffrey began,
plaintiff was in a different area of the bar and saw
only the fight's end. Plaintiff testified that, after the
passage of some time, he and the other three men
decided to leave.

Plaintiff and Domier went to plaintiff's car. Plaintiff
drove through the parking lot to the bar's back door.
Kanka and Fitzgerald had told him that they would
meet him shortly. They had agreed that plaintiff
would wait by the car. When Kanka did not emerge
from the bar, plaintiff went in to find him.

When plaintiff again left the bar, Geoffrey con-
fronted him, demanding to know the whereabouts of
Kanka. The two exchanged words. Geoffrey struck
plaintiff, breaking his nose and jaw.

Plaintiff brought a dramshop and premises liability
action against defendant Royal Dequindre. At the
close of proofs, the trial court granted defendant's
motion for a directed verdict with respect to the
dramshop claim. It denied the motion regarding the

premises liability claim. The jury returned a verdict in plaintiff's favor for over $90,000.[1]

The Court of Appeals reversed the verdict, holding that the trial court erred in denying defendant's motion for a directed verdict on the premises liability claim. It found two cases of this Court controlling: *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495; 418 NW2d 381 (1988), and *Scott v Harper Recreation, Inc*, 444 Mich 441; 506 NW2d 857 (1993).

### GOODMAN v FORTNER

Plaintiff, his girlfriend, Theresa Woods, and their friends, Otis Glover, Rodney Tittle, Charles Woods, and Carlton Woods, went to defendant Bootleggers for "Soul Night." While they were at the bar, Joslynn Lewis came in. She was plaintiff's former girlfriend and mother of his child. A scuffle erupted between Theresa Woods and Lewis. According to plaintiff, Lewis threw her drink and then her glass in Woods' face. Plaintiff then escorted Lewis from the bar. The fight continued in the parking lot.

Plaintiff and Woods reentered the bar and took refuge in the coat room from Lewis and her friends. While there, plaintiff testified, he repeatedly asked the bouncers to help him or to call the police. Glover also asked the bouncers to call the police. Plaintiff then requested an escort to the fence at the rear of the bar. The bouncers refused all the requests. Plaintiff was told merely to "sit tight" and everything would be "all right in a minute."

---

[1] The jurors found defendant Royal Dequindre seventy-five percent responsible and Geoffrey twenty-five percent responsible.

While plaintiff and Theresa Woods were waiting, Shawna Lewis and Duquanna Lewis, Joslynn's relatives, went back into the bar and again attacked Woods. Shawna was escorted outside once more. Duquanna remained inside and was able to attack Woods yet again when plaintiff went to the restroom. Glover testified that the bouncers saw the fight, did nothing, and that plaintiff finally interceded when he returned from the restroom.

Tittle went outside to talk to Joslynn Lewis who was in the parking lot. Lewis threatened plaintiff, saying that he was going to die. Shawna announced that she would get help and reentered the bar. Tittle saw her approach defendant Fortner. He asked the bouncers why they did not call the police or end the fighting.

Plaintiff decided to walk with Theresa Woods to her home. A bouncer opened the door to let them outside. Plaintiff saw Joslynn Lewis and her friends in the parking lot. They began yelling at him. Glover testified that, though no bouncers were in the lot, bouncers standing at the door could undoubtedly hear the threats. As plaintiff turned to speak with Lewis and her friends, Fortner approached him and shot him in the chest. He was taken to the hospital and treated for the gunshot wound.

Plaintiff brought a premises liability action against defendant Bootleggers. At the close of plaintiff's proofs, the trial court denied defendant's motion for a directed verdict. The jury awarded $50,000 in damages.

In a two-to-one decision, the Court of Appeals affirmed the judgment. The majority agreed that business invitors are not normally required to protect cus-

tomers from the criminal acts of others. However, it
ruled that merchants may have a duty to eject unruly
patrons or summon the police when they know or
should know of the presence of unruly patrons.

II

This Court is asked to review the trial courts' deni-
als of defendants' motions for directed verdicts. When
reviewing such a motion, this Court looks at the evi-
dence and legitimate inferences drawn from the evi-
dence in a light most favorable to the nonmoving
party. *Brisboy v Fibreboard Corp*, 429 Mich 540, 549;
418 NW2d 650 (1988).

III

As we have noted in the past, questions regarding
duty are for the court to decide as a matter of law.
*Scott, supra* at 448. The general rule is that a person
does not have a duty to aid or protect another person
endangered by a third person's conduct. *Williams,
supra* at 498-499. An exception to the rule arises
where there is a special relationship between a plain-
tiff and a defendant. *Id.* at 499.[2]

---

[2] Section 314A of 2 Restatement Torts, 2d, p 118, provides:

   (1) A common carrier is under a duty to its passengers to take
reasonable action

   (a) to protect them against unreasonable risk of physical harm,
and

   (b) to give them first aid after it knows or has reason to know
that they are ill or injured, and to care for them until they can be
cared for by others.

   (2) An innkeeper is under a similar duty to his guests.

   (3) A possessor of land who holds it open to the public is under
a similar duty to members of the public who enter in response to
his invitation.

   (4) One who is required by law to take or who voluntarily takes
the custody of another under circumstances such as to deprive the

The rationale behind imposing a duty to protect in these special relationships is based on control. In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in control because he is best able to provide a place of safety. [*Id.*]

Owners and occupiers of land have a special relationship to their invitees. *Id.* At the same time, merchants are not insurers of their safety. Consequently, merchants do not have a duty to protect their invitees from unreasonable risks that are unforeseeable. *Id.* at 500. This Court has imposed a requirement that, in order for a special-relationship duty to be imposed on a defendant, the invitee must be "readily identifiable as [being] foreseeably endangered." *Murdock v Higgins*, 454 Mich 46, 58; 559 NW2d 639 (1997); *Marcelletti v Bathani*, 198 Mich App 655, 665; 500 NW2d 124 (1993). "Readily" is defined as "promptly; quickly; easily." *The Random House College Dictionary* (rev ed).

These principles are embodied in § 344 of 2 Restatement Torts, 2d, which provides the following:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or *intentionally harmful acts of third persons* or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

other of his normal opportunities for protection is under a similar duty to the other.

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it. [*Id.*, pp 223-224 (emphasis added).]

## Comment f to § 344 states:

Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection. [*Id.*, pp 225-226.][3]

### *MANUEL*

This Court has recognized that merchants may have a common-law duty to protect their patrons from the criminal acts of other patrons. *Manuel v Weitzman*, 386 Mich 157; 191 NW2d 474 (1971). In *Manuel*, Arthur Manuel was a customer in the defendant's bar. He was attacked by another patron. Manuel alleged

---

[3] A majority of jurisdictions has followed the Restatement and found that merchants have a duty to protect their patrons from reasonably foreseeable injuries. See *Vigil v Pine*, 176 Colo 384; 490 P2d 934 (1971); *A Trysting Place, Inc v Kelly*, 245 So 2d 875 (Fla App, 1971); *McGill v Frasure*, 117 Idaho 598; 790 P2d 379 (1990); *Delozier v Evans*, 158 Ariz 490; 763 P2d 986 (1988); *Quinn v Winkel's, Inc*, 279 NW2d 65 (Minn, 1979). See, also, anno: *Tavernkeeper's liability to patron for third person's assault*, 43 ALR4th 281.

that the defendant violated his common-law duty to maintain a safe premises for his business invitees and that the defendant violated the dramshop act. *Id.* at 160-161.

The issue before us in *Manuel* was whether a common-law action for negligence can be joined with an action brought under the dramshop act. We concluded that it could, holding that the dramshop act afforded the exclusive remedy for injuries arising out of an unlawful sale of intoxicants. However, the dramshop continued to have a common-law duty to protect patrons from injury from another patron whom it permitted on the premises. *Id.* at 165-167.

We noted in *Manuel* that the plaintiff introduced evidence showing that the defendant knew that the offending patron had engaged in a fight at the bar. The defendant was aware that the bartenders took insufficient measures to eject the patron after he became disruptive. *Id.* at 166-167. When the patron attacked the plaintiff, the bartenders did not act immediately to protect him from injury. Therefore, it was proper for the plaintiff to allege a dramshop action and a common-law negligence action in separate counts. *Id.* at 167.

### *WILLIAMS*

Defendants in the instant cases rely on this Court's decisions in *Williams* and *Scott,* where we stated that merchants are not ordinarily responsible for the criminal acts of third parties. In *Williams,* the plaintiff was shopping in the defendant's store when an armed robbery occurred. As he fled, the robber shot him. The plaintiff sued the store, alleging a breach of its duty to exercise reasonable care by not providing

armed and visible security guards for the safety of its patrons. *Id.* at 497.

This Court agreed with the store that a merchant's duty of reasonable care does not include providing armed and visible security guards to deter the criminal acts of third parties. We found, as a matter of public policy, that a merchant cannot control crime in the community. It is unreasonable to expect a merchant to provide police protection, a duty vested in the government. *Id.* at 501-502.

## SCOTT

In *Scott*, the defendant advertised that its establishment provided "Free Ample Lighted Security Parking." *Id.* at 443. The plaintiff left the defendant's nightclub after midnight. As he walked to his car in the parking lot, an unidentified man approached and shot him six times.

The plaintiff sought to avoid the *Williams* rule by relying on the principle that one voluntarily undertaking a responsibility is liable for an injury he proximately causes by his negligence. *Id.* at 448. We held, however, that the defendant's advertising did not guarantee the plaintiff's personal safety. *Id.* at 450-451. We reinforced the holding in *Williams* that, ordinarily, merchants are not responsible for the criminal acts of third persons. *Scott, supra.*[4]

*Williams* and *Scott* did not overrule the law established in *Manuel*. *Williams* and *Scott* involved random unforeseeable assaults on an invitee by third

---

[4] We also held that the rule in *Williams* remains in force "even where a merchant voluntarily takes safety precautions." *Scott, supra* at 452. A suit cannot be maintained "on the theory that the safety measures are less effective than they could or should have been." *Id.*

parties.[5] The plaintiffs were not readily identifiable as foreseeably endangered. The merchants had had no previous contact with the assailants and could not have determined that the plaintiffs were in danger.

The Court of Appeals has found merchants potentially liable for not protecting their patrons from criminal acts of third parties. *Jackson v White Castle System, Inc*, 205 Mich App 137; 517 NW2d 286 (1994); *Green v Shell Oil Co*, 181 Mich App 439; 450 NW2d 50 (1989); *Diomedi v Total Petroleum, Inc*, 181 Mich App 789; 450 NW2d 91 (1989); *Mills v White Castle System, Inc*, 167 Mich App 202; 421 NW2d 631 (1988). It has ruled that merchants have a duty to act where they have or should have knowledge that their patrons are in danger.[6]

### MILLS

In *Mills*, the plaintiffs and two companions parked their car in the defendant's parking lot. *Id.* at 203-204. Several people in the lot were drinking alcoholic beverages, using obscenities, and acting disorderly. *Id.* at 204. The plaintiffs ignored the group and entered the restaurant. *Id.* When they left, the same group of people attacked them. During the attack, one of the plaintiffs' companions reentered the restaurant and asked the manager to call the police. The manager refused and directed the person to use a pay phone across the street. The Court of Appeals distinguished the case from *Williams*. It found that the defendant was

---

[5] See *Alexander v American Multi-Cinema*, 450 Mich 877 (1995) (LEVIN, J., dissenting).

[6] The Court of Appeals has not found merchants liable who had no notice or awareness of potential dangers to their customers. *Perez v KFC Nat'l Management Co, Inc*, 183 Mich App 265; 454 NW2d 145 (1990).

in a position to control the disorderly group's actions and could have prevented the assault by calling the police. *Id.* at 208.

### *JACKSON*

Similarly, in *Jackson*, an unknown assailant shot the plaintiff in the leg as the plaintiff waited in line at the defendant's restaurant. The assailant was part of an unruly group that had been in the restaurant and had earlier threatened the plaintiff while he was in line. *Id.* at 138. The Court of Appeals held that, unlike *Williams*, *Jackson* presented evidence of an ongoing, prolonged disturbance. *Id.* at 141. The defendant knew or should have known that there were unruly persons on its premises. It had a duty to plaintiff once it knew or should have realized that he was in danger. *Id.* at 142.

### IV

With these principles in mind, we must determine whether defendants Royal Dequindre in *Mason* and Bootleggers in *Goodman* had a duty to protect the respective plaintiffs.

### *MASON*

We find that Royal Dequindre had no duty to take reasonable measures to protect Steven Mason from Geoffrey's attack. Examined in a light most favorable to plaintiff, the evidence does not establish that it was foreseeable that Geoffrey would attack Mason.

Plaintiff Mason had no involvement in the original altercation between Geoffrey and Kanka. He was not near the area where the initial fight occurred. After Geoffrey and Kanka were separated, Charles Little and Paul Ellis, bouncers at the bar, escorted Geoffrey

outside. Geoffrey acquiesced and made no indication that he would remain in the parking lot.

Later, Mason left the bar. Little, Ellis, and Fulco believed that Geoffrey was no longer in the bar's parking lot. Even had they known that Geoffrey remained in the lot, they had no knowledge of an association between Mason and Kanka or Geoffrey. Therefore, defendant was unaware that plaintiff was in danger when he left the bar.

Accordingly, the facts, viewed in a light most favorable to plaintiff, do not support a finding that Geoffrey's attack on plaintiff was foreseeable to defendant. Therefore, we will not impose a duty on defendant under these circumstances.

### GOODMAN

We agree with the Court of Appeals majority that defendant Bootleggers had a duty to take reasonable measures to protect plaintiff Kenneth Goodman. Defendant knew or should have known that a fight had occurred between Lewis and Woods. Plaintiff specifically requested that the bar's bouncers call the police in response. Moreover, when the bouncers opened the door to allow plaintiff and Woods to leave, Lewis and her friends were visible and audible, yelling at plaintiff. Therefore, defendant was on notice that plaintiff, as well as Lewis, was in danger.

The harm to plaintiff was also foreseeable. Detective Randall Jones testified that two previous shootings had occurred in the defendant bar's parking lot not long before Goodman's shooting. One may have occurred in the same month as the Goodman shooting. Moreover, at least one resulted from an argument between bar patrons inside the bar. Consequently,

defendant was on notice that the harm that occurred was foreseeable, plaintiff having been an identifiable invitee of defendant's establishment.

A reasonable jury could also find that defendant did not take reasonable steps to prevent plaintiff's injury. Although defendant forcefully removed Lewis and her group from the bar, they did not attempt to remove them from the property. Moreover, defendant failed to call the police when plaintiff requested it.

CONCLUSION

We conclude that merchants have a duty to use reasonable care to protect their identifiable invitees from the foreseeable criminal acts of third parties. The measures they take must be reasonable. In *Mason*, the Court of Appeals correctly found that Geoffrey's criminal attack on Mason was unforeseeable. Therefore, defendant had no duty to protect him. In *Goodman*, the Court properly found there was ample evidence that defendant knew about the ongoing altercation, that Goodman was personally threatened, and that injuries to him were likely to result. Therefore, the Court of Appeals decisions in both *Mason* and *Goodman* are affirmed.

MALLETT, C.J., and BRICKLEY, CAVANAGH, and RILEY, JJ., concurred with KELLY, J.

WEAVER, J. I concur with the result only in *Mason*, and dissent from the result in *Goodman*.

I disagree with the majority's holding in *Goodman* that plaintiff's injury was foreseeable because two previous shootings had recently occurred in the defendant bar's parking lot. This is tantamount to saying that almost any injury is foreseeable to an invitee

in high-crime, high-risk areas. Not only do I disagree with this Court's apparent policy to impose a higher degree of liability on merchants and other property owners in high-crime areas, but I find the majority's conclusion to be without a logical foundation.

The majority finds that the harm that occurred, the shooting, was foreseeable because two shootings had occurred in that location before the attack on plaintiff. Would the harm still have been foreseeable had the plaintiff been stabbed, or clubbed? The majority's theory would make it foreseeable that *any* patron would be shot upon leaving the bar.

I also disagree with the majority's underlying premise that "merchants can be liable in tort for failing to take reasonable measures to protect their invitees from harm caused by the criminal acts of third parties." *Ante*, p 393. I believe that owners and occupiers of land do not have a duty to protect invitees from the criminal acts of third parties, absent extraordinary circumstances. This Court has previously held that a merchant is not ordinarily required to protect customers from criminal acts of third parties. *Scott v Harper Recreation, Inc*, 444 Mich 441, 448; 506 NW2d 857 (1993); *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988).

The majority misstates the general rule set forth by this Court in *Williams*. *Williams* discusses tort liability for nonfeasance, holding that "as a general rule, there is no duty that obligates one person to aid or protect another." *Id.*, p 499.[1] *Williams* recognized an

---

[1] *Williams* said that "In determining standards of conduct in the area of negligence, the courts have made a distinction between misfeasance, or active misconduct causing personal injury, and nonfeasance, which is passive inaction or the failure to actively protect others from harm. The com-

exception to the general rule, where there is a special relationship between a plaintiff and defendant, (i.e., employer-employee or innkeeper-guest). *Id.* Ultimately, *Williams* rejected the plaintiff's assertion that the defendant had a duty to provide police protection against third-party criminal acts.

However, the majority misstates the *Williams* general rule for nonfeasance. The majority purports to rely on *Williams* for the proposition that "The general rule is that a person does not have a duty to aid or protect another person *endangered by a third person's conduct. Williams, supra* at 498-499." *Ante,* p 397 (emphasis added). By adding six words to the general rule for nonfeasance, the majority incorrectly makes it seem that *Williams* created liability for failure to protect others *from a third party's actions* when there is a special relationship between the plaintiff and defendant. This is ironic in light of *Williams'* finding that merchants do not have a duty to provide police protection against third-party criminal acts and this Court's holding in *Scott, supra,* p 448, that a merchant is not ordinarily required to protect customers from criminal acts of third parties.

The majority should acknowledge that the step it takes today is a new one and not, in effect, pretend that it is merely applying established precedent. I would hold that in both cases, the defendants were not required to protect the plaintiffs from the criminal acts of third parties.

---

mon law has been slow in recognizing liability for nonfeasance because the courts are reluctant to force persons to help one another and because such conduct does not create a new risk of harm to a potential plaintiff. Thus, as a general rule, there is no duty that obligates one person to aid or protect another." *Id.,* pp 498-499.

BOYLE, J. (*concurring in part and dissenting in part*). I agree that the initial question is one of duty, and I further agree with Justice KELLY's result in *Mason* and in *Goodman*. I write separately because I do not agree with Justice KELLY's rationale in *Goodman*, which appears to extend a merchant's duty to protect an invitee against criminal acts of third parties. Because a tavern keeper has a common-law duty to supervise the premises by using reasonable care to protect patrons from foreseeable injury, *Manuel v Weitzman*, 386 Mich 157; 191 NW2d 474 (1971), *Millross v Plum Hollow Golf Club*, 429 Mich 178; 413 NW2d 17 (1987), and *Jackson v PMK Corp*, 430 Mich 262, 276-277; 422 NW2d 657 (1988), in my view it is unnecessary and unwise to either explicitly or implicitly opine in this case regarding a merchant's general duty of care toward invitees. Thus, while I disagree with Justice WEAVER's implicit suggestion that *Manuel v Weitzman* has been overruled or limited by this Court, I agree with her concern that the majority has impermissibly expanded the general rule of nonliability for criminal acts of third parties.

*Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988), and *Scott v Harper Recreation, Inc*, 444 Mich 441, 448; 506 NW2d 857 (1993), involved the issue of a merchant's general duty to an invitee.[1] As the majority seems to acknowledge by citing *Manuel v Weitzman*, neither case purported to overrule or limit the Court's previous holdings regarding the tavern owner's duty to protect a patron from injury by another. The fact that this

---

[1] Homant & Kennedy, *Landholder responsibility for third party crimes in Michigan: An analysis of underlying legal values*, 27 U Tol L R 115 (1995).

Court has not imposed on merchants a general duty to protect an invitee from the intentional criminal acts of another arising from prior crimes in the area or on the premises, does not abrogate the tavern owner's common-law duty to take reasonable care to protect parties where it knew or had reason to know that a crime was going to occur.[2] Given that the Court has long recognized that a tavern presents an exception to the rule that there is no duty to protect invitees against intentional criminal acts of third persons, the majority's analysis of duty is unwarranted.

Given that a duty existed, and that there was conflicting evidence whether the defendant acted reasonably in responding to the disturbance, it cannot be said that the verdict of the jury was not supported by the evidence. *Gorby v Yeomans*, 4 Mich App 339; 144 NW2d 837 (1966). This case is an inappropriate vehicle for consideration of whether, and to what extent, a merchant has a general duty to anticipate the criminal acts of third parties. Thus, to the extent that the rationale suggests any modification of the decisions in *Williams* and *Harper Recreation*, I respectfully dissent.

---

[2] Anno: *Tavernkeeper's liability to patron for third person's assault*, 43 ALR4th 281.