Cavanagh, J.
(dissenting). The majority holds that under Mason v Royal Dequindre, Inc, 455 Mich 391; 566 NW2d 199 (1997), a merchant has a duty to “respond reasonably to situations occurring on the premises that pose a risk of imminent and foreseeable harm to identifiable invitees,” and the duty to respond entails nothing more than the merchant’s attempt to contact the police. Ante at 325-326. This artful formulation of the Mason duty removes any inquiry into prior similar occurrences as part of the foreseeability analysis, reducing the foreseeability question to whether a merchant should have known that an ongoing occurrence on the premises could have harmed an identifiable invitee. Because the majority created this formulation of the Mason duty with brazen disregard for the principles that created it, I respectfully dissent.
i
In Mason, we had to determine whether merchants have a common-law duty to protect their patrons from criminal acts of third parties. To resolve this question, we examined the rationale behind imposing a duty on a person to protect another person endan *347 gered by a third party’s conduct. Generally, a person has no duty to protect another person endangered by a third party’s conduct unless there is a special relationship between those persons. The reason for this exception to the general no-duty rule when a special relationship is present is based on control. As we explained, “In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in control because he is best able to provide a place of safety.” Mason at 398. Thus, while merchants are not insurer’s of their invitees’ safety, we recognized that courts will impose a duty on a merchant to protect its invitees, like the duty imposed when a special relationship is present, when they are “readily identifiable as [being] foreseeably endangered.” Id. at 398, quoting Murdock v Higgins, 454 Mich 46, 58; 559 NW2d 639 (1997).
After exploring the basis for imposing a duty on a merchant to protect its invitees, we explained that these same principles are embodied in 2 Restatement Torts, 2d, § 344, pp 224-225, and comment f to § 344, pp 225-226. The Restatement further explains how control and foreseeability govern a landowner’s liability to its invitees. Section 344 provides:
A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
(a) discover that such acts are being done or are likely to be done, or
*348 (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.
Comment f to § 344 states:
Since the possessor is not an insurer of the visitor’s safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.
In quoting § 344 and comment f, we recognized that the imposition of a duty on a merchant to protect its invitees from criminal conduct of third parties is contingent upon whether the character of his business, or past experience either in general or at a specific time, gives the merchant knowledge or reason to know that those acts may occur again. As noted in the quoted sections of the Restatement, this analysis includes a consideration of whether such acts had occurred in the past.
Following these premises liability principles, we held that “merchants can be liable in tort for failing to take reasonable measures to protect their invitees from harm caused by the criminal acts of third parties. The harm must be foreseeable to an identifiable invitee and preventable by the exercise of reasonable care.” Id. at 393. Clearly, our holding in Mason was *349 premised on tort principles that require a look into the character of the merchant’s business and prior similar occurrences to determine whether the harm is foreseeable.
The majority introduces a version of the Mason duty that ignores the basis of our holding in Mason and instead holds that under Mason, a merchant has a duty to respond to ongoing frays on the premises, and the duty is only to make an effort to contact the police. This formulation essentially uproots the entire basis for imposing a duty on merchants to protect their invitees that we expressed in Mason by extinguishing the consideration of the character of the merchant’s business and prior similar occurrences when deciding if the harm was foreseeable. Instead, the majority limits the foreseeability question to whether this particular fray would have harmed this particular plaintiff, without citing any legal support for its decision to alter the duty.
In reformulating the Mason duty, the majority overrules Mason to the extent that it relied on § 344 and comment f of the Restatement which clearly refutes the majority’s clarified version of the Mason duty. Ante at 334, n 10. The reason the majority states for overruling this part of Mason is that § 344 and comment f are contrary to our holding in Williams v Cunningham Drug Stores, Inc, 429 Mich 495; 418 NW2d 381 (1988). In Williams, we stated that merchants are not ordinarily responsible for criminal acts of third parties because it is against public policy to require a merchant to anticipate crime in the community that may harm its invitees. The majority claims that the only way to reconcile Williams with the Mason holding that a merchant may be liable when the criminal act that harmed its invitee was foreseeable is to say *350 that a merchant only has a duty to “respond reasonably to such a situation.” Ante at 334. Furthermore, the majority concludes that the duty entails only making an effort to contact the police because Williams prevents the imposition of any further act. The majority fails to recognize, however, that a new formulation of the Mason duty is not necessary in light of Williams because we distinguished Williams when we decided Mason.
According to the majority, Williams closed the door to applying § 344 when deciding whether a merchant has a duty to protect its invitees from criminal acts because merchants cannot anticipate crime. A close reading of Williams, however, reveals that is not true. In' Williams, we recognized § 344, but refused to apply it to the facts because the nature of the harm, random crime in the community unrelated to the merchant’s business, presented the merchant with no degree of control over its prevention. Williams at 501, n 15. Thus, contrary to the majority’s assertion, we recognized in Williams that application of § 344 depends on the facts of a case, i.e., the nature of the harm and degree of control a merchant had in each case.
In Mason, we discussed the Williams’ decision and cited Justice Levin’s dissent in Alexander v American Multi-Cinema, 450 Mich 877; 540 NW2d 674 (1995), as support for distinguishing the Williams holding. Mason at 401-402, n 5. In Alexander, a theater patron was injured in a scuffle with another patron who was standing in line for a late night show. Justice Levin dissented from the majority’s decision to deny leave, stating that he would grant leave to discuss a merchant’s duty to protect its invitees from the criminal acts of third parties. Quoting § 344, Justice Levin *351 explained that, although no invitor is automatically liable for criminal acts of third parties on the invitor’s property, an invitor has a duty to act reasonably to protect invitees from foreseeable hazards. Alexander at 879-880. Distinguishing Williams on its facts, Justice Levin explained that the merchant in Williams was not faced with a foreseeable altercation because the merchant had no control over the random, spontaneous nature of the harm. Thus, Williams addressed “the random assault bearing no relation to the merchant’s business, and did not address the merchant’s liability for risks created by the merchant’s business.” Id. at 882. Noting that this distinction is relevant, Justice Levin stated that although we have held that “a merchant is not ordinarily required to protect customers from the criminal acts of third persons, . . . [i]f one assumes that a situation created by the defendant will be classified as extraordinary, the distinction then becomes relevant.” Id. at 881 (emphasis added). Thus, if the merchant created the situation that led to the harm, the situation can be treated as extraordinary and a merchant can be liable for the criminal acts that harmed its patrons, if the acts were foreseeable. Justice Levin noted that the facts in Alexander created such an extraordinary situation because the scuffle between the patrons waiting in line “was foreseeable in light of the owner’s considerable experience with crowd control in general, and handling and organizing the pretheater crowd in particular.” Id.
Contrary to the majority’s assertion that the Mason holding is inconsistent with Williams, in Mason we recognized Justice Levin’s dissent in Alexander as the method to distinguish the Williams holding and created a duty based on § 344 that essentially focused on *352 the nature of the harm, the foreseeability of the harm, and the control a merchant has over the harm. We implicitly noted that a careful consideration of the facts in each case is essential to determine whether a § 344 analysis is justified. If the nature of the harm is random and spontaneous, and thus unrelated to the character of the merchant’s business, the merchant cannot be expected to foresee its occurrence, and reference to prior similar occurrences is not justified. If the nature of the harm was created by the character of the merchant’s business, reference to prior similar occurrences is justified because a merchant can be expected to foresee such harm happening again, in light of his prior experience with such acts. Accordingly, we concluded that “merchants have a duty to use reasonable care to protect their identifiable invitees from the foreseeable criminal acts of third parties.” Mason at 405. Our decision in Mason was therefore clearly based on a careful consideration of the common-law tort principles of control and foreseeability, as articulated in § 344, and how they coexist with the holding in Williams. Thus, clarification of the Mason duty is not necessary, as that decision clearly acknowledged how the control and foreseeability origins of § 344 may apply to certain factual scenarios without violating our holding in Williams.
n
As the preceding discussion illustrates, premises liability law contains many nuances that, without complete consideration, may appear inconsistent. The majority has seized on this apparent, but vacuous, inconsistency and held that a clarification is necessary in this area of law. However, read closely, the *353 principles have distinguishing characteristics that allow them to exist without conflict in three separate categories.
(1) TRADITIONAL PREMISES LIABILITY
Traditionally, a merchant has had a duty to protect its invitees from defects or dangerous conditions on the land of which the merchant knew or had reason to know.
(2) HYBRID PREMISES LIABILITY
Under hybrid premises liability, a merchant has a duty to protect its invitees from activities involving actors on the premises of which a merchant knew or had reason to know. The tricky part, however, is when the activity consists of criminal acts by third parties. If the activity on the land is a criminal act, it must be determined whether the character of the merchant’s business and the nature of the act are of a sort that a merchant could be expected to anticipate. If the nature of the criminal act is random, spontaneous, and thus unrelated to the merchant’s business and the invitee’s purpose for being there, the situation falls into category three, discussed below. If, however, the nature of the criminal act is not random or spontaneous, and is related to the merchant’s business and the invitee’s purpose on the premises, as explained in Mason and Justice Levin’s dissenting opinion in Alexander, we resort to the control and foreseeability origins of § 344 to determine whether the merchant has a duty. See Prosser & Keeton, Torts (5th ed), § 61, p 428 (stating that a possessor of land is required to take action when he has reason to *354 believe, from what he has observed or from past experience, that the conduct of others on the land will be dangerous to other invitees, but not when the landowner cannot anticipate the harm).
(3) THE EXCEPTION TO HYBRID LIABILITY
The exception to hybrid liability is when there is a criminal act by third parties on the premises, but the act is random and spontaneous, having no relation to the merchant’s business other than that it is a business, the merchant has no duty. In the exception situation, the random, spontaneous nature of the act removes any degree of control a merchant has over the act occurring, thus making any application of the control and foreseeability origins of § 344 improper. See, e.g., Williams.
m
The facts of these cases must be examined to determine which of the three premises liability categories governs. Because the harm did not result from a physical defect on the premises, the act does not fall within the traditional premises liability categoiy. Rather, the harm resulted from activity on the land, potentially criminal in nature, which requires us to decide whether the nature of the act qualifies it as a hybrid or exception situation. The character of defendant Pine Knob’s business created the risk of harm to its invitees, by subjecting its patrons to view concerts in a venue where sod throwing had previously occurred. The sod throwing in these cases was, therefore, not random or spontaneous, was related to the invitee’s puipose on the premises, qualifying these *355 cases under the hybrid category, and thus justifies applying the control and foreseeability origins of § 344.
Pine Knob charges its patrons to enter its forum to watch concerts, where part of the seating area for patrons is a sod-covered hill. Once the patron sets foot inside the venue, he has entrusted himself to the control and protection of Pine Knob, and his ability to protect himself from activities that may occur on the premises diminishes. Thus, contrary to the majority’s claim, Pine Knob has better control over the activities of patrons it has chosen to host than the patrons themselves. The potentially criminal activity in these cases that occurred in this controlled environment was patrons ripping up sod from the hill and throwing it. The question becomes whether this act arose from the character of Pine Knob’s business, or was random or spontaneous. The majority has manipulated the class of activity at issue in this case, sod throwing, to be strictly criminal. In so doing, the majority ignores the fact that this activity, albeit potentially criminal,[1] only occurred because of the nature of Pine Knob’s business. In other words, a patron at Pine Knob would not be subjected to injury from such a concert activity like sod throwing if he were not present on Pine Knob’s premises; it is unique to Pine Knob’s business. Because Pine Knob charged a fee for entry, subjected its patrons to seating on sod-covered ground, sod-throwing acts had occurred before,[2] and the harm suffered was a result of plaintiffs’ purpose on the *356 premises and the nature of Pine Knob’s business, to watch concerts at such a venue, I would find this an “extraordinary” situation, unlike that in Williams. These factors justify imposing a duty on Pine Knob. Pine Knob not only created the risk of harm to its invitees, but it had reason to know that such sod throwing may occur again, on the basis of its prior experiencé with such activity. This act is therefore unlike the random, spontaneous criminal act that occurred in Williams, which had nothing to do with the nature of the store owner’s business, and the concerns of applying the control and foreseeability concepts do not arise. It thus becomes clear that the majority’s overstated concern for subjecting merchants in high-crime areas to increased liability is misplaced. Random crimes in the community are unique to the community, not to the businesses present in that community. Hence, the initial analysis, as proposed by Justice Levin and further explained in § 344, focuses on whether the act that injured the patron is unique to the merchant’s business, not the location of the merchant’s business. If the act is unique to the merchant’s business, only then is it justifiable to say that the merchant has control over such acts and, thus, can foresee such future occurrences. Thus, retaining the control and foreseeability origins of § 344 in this situation does not vitiate the Williams holding, and Pine Knob should be held liable if a jury finds that the sod throwing was a foreseeable act and Pine Knob failed to take reasonable measures to protect its invitees from such foreseeable harm.
*357 iv
Today the majority embarks on the unnecessary journey of clarifying the duty a merchant has to protect its invitees from criminal acts of third parties, as discussed in Mason. This clarification takes premises liability into an unfounded direction with far-reaching consequences.[3] By eradicating the two profound tenets behind the Mason duty, control and foreseeability, the majority has created an unprecedented formulation of the duty providing that if the act that caused the harm could be charged as criminal, the merchant can never be hable if it attempts to contact the police. Such a conclusion ignores an entire category of criminal acts that arise solely because of the character of the merchant’s business and the invitee’s purpose on *358 the premises. Because this was clearly not intended when we created the Mason duty, I dissent.
In accordance with the original, unclarified Mason duty, in both of the instant cases I would deny summary disposition so that a jury may determine (1) whether the sod throwing was foreseeable, (2) whether the plaintiffs were identifiable invitees, and (3) whether defendant Pine Knob took reasonable measures to protect its invitees from the harm.
Kelly, J., concurred with Cavanagh, J.

 The record indicates that some 100 sod-throwing patrons were ejected from the premises, pursuant to Pine Knob’s policy.

 In Lowry, the sod throwing occurred once before at the same festival-type music concert, and in MacDonald it occurred twice in one night.

 The following hypothetical example illustrates the fundamental problems with the majority’s reformulation.
Defendant humane society allows persons interested in adopting animals to observe the animals through cages. There is a separate “dog wing” in which all the dogs are kept in individual cages. Patrons on the premises interested in adopting a dog are allowed access to the dog wing. A patron who is visiting the dog wing gets increasingly passionate about the dogs being cooped up and breaks open each cage, setting the dogs free. The dogs become scared and attack a family who was there adopting their new pet. Unfortunately, one of the children is severely injured. The humane society is familiar with this “passionate patron” syndrome, and it in fact occurred the previous day, killing a patron. Luckily for the humane society, under the majority’s clarified Mason duty, this previous attack will not be considered, regardless of the number of times the attacks have happened, the humane society’s experience with controlling the animals on its premises, and the experience the humane society has with the harm caused by “passionate patrons." Rather, in the midst of watching the dogs viciously attacking patrons, all the humane society must do to avoid liability to the injured patrons is to make the effort to call the police. Thus, even though the character of the business created the risk of harm, the humane society had past experience with such mishaps, and the degree of control the humane society has over its patrons was great, there is no duty to protect. I cannot agree that this is a proper formulation of the duty.