# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46993

| | |
|---|---|
| STEVEN CHRISTIAN FELL and AUDRA FELL, husband and wife, <br><br>     Plaintiffs-Appellants, <br><br> v. <br><br> FAT SMITTY'S L.L.C., <br><br>     Defendant-Respondent. | Boise, May 2020 Term <br><br> Opinion filed: July 2, 2020 <br><br> Melanie Gagnepain, Clerk |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Joel E. Tingey, District Judge.

The judgment of the district court is <u>affirmed</u>.

Racine Olson, PLLP, Pocatello, for Appellants. Rachel Miller argued.

Brassey Crawford, PLLC, Boise, for Respondent. Ryan Janis argued.

_____

MOELLER, Justice

This case arises from a stabbing that took place outside of an Idaho Falls bar. Steven and Audra Fell were patrons of the First Street Saloon, which is owned and operated by Fat Smitty's L.L.C. (Fat Smitty's). Towards the end of the evening, an altercation took place that resulted in Steven Fell being stabbed by another patron, LaDonna Hall. The Fells filed a complaint against Fat Smitty's, alleging Fat Smitty's breached its duty to (1) warn the Fells, as invitees, of any hidden or concealed dangers in the bar, (2) keep the bar in a reasonably safe condition, and (3) protect the Fells from reasonably foreseeable injury at the hands of other patrons at the bar. The district court granted summary judgment in favor of Fat Smitty's, ruling that the Fells' claims were barred by Idaho's Dram Shop Act (I.C. § 23-808) because the Fells failed to give Fat Smitty's timely notice of their claims. The Fells appealed the district court's grant of summary judgment. For the reasons stated below, we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On November 26, 2016, the Fells were patrons of the First Street Saloon in Idaho Falls, a bar owned and operated by Fat Smitty's. LaDonna Hall (hereinafter "Hall") and her mother, Pamela Hall, were also patrons of the First Street Saloon that evening. Shortly before closing, Hall's mother—who had already caused some problems earlier in the night—started "yelling and screaming" while trying to locate her cellphone. In response, two bartenders, Rachel Lynn Welker-Mate and Alex Clawson, removed Hall's mother from the premises. Hall followed her mother outside in the hopes of calming her down, but to no avail.

Hall and her mother got into a physical altercation outside the entrance of the First Street Saloon. Both bartenders and the Fells ran outside to break up the fight. For unknown reasons, Hall and Audra Fell got into an altercation. Welker-Mate restrained Audra Fell and pulled her back inside the First Street Saloon, thereby leaving Steven Fell, Hall, and her mother outside the bar. Moments later, Steven Fell entered the bar bleeding from his abdomen where Hall had stabbed him multiple times. Hall was subsequently arrested. Steven Fell was transferred to the hospital where his injuries were treated and he was later released.

On April 2, 2018, the Fells filed a complaint against Fat Smitty's. The Fells alleged one cause of action: Negligence. The Fells alleged that Fat Smitty's owed them a duty to (1) warn them, as invitees, of any hidden or concealed dangers in the First Street Saloon, (2) keep the First Street Saloon in a reasonably safe condition, and (3) protect them from reasonably foreseeable injury at the hands of other patrons at the First Street Saloon. The Fells argued that Fat Smitty's "knew or should have known that LaDonna Hall was a dangerous individual." Accordingly, the Fells asserted that Fat Smitty's breached its duty "by failing to warn them of the danger that LaDonna Hall posed," "failing to properly train its agents or employees," and "failing to cease service to LaDonna Hall and/or remove her from [the First Street Saloon's] premises." Such negligence, according to the Fells, directly and proximately "caused the Fells to sustain personal injuries."

Fat Smitty's moved for summary judgment. Fat Smitty's alleged that it was entitled to summary judgment for three reasons: (1) the Fells failed to provide timely notice to Fat Smitty's of their intent to pursue a cause of action against them as required by Idaho's Dram Shop Act (I.C. § 23-808(5)); (2) the Fells cannot prove that Fat Smitty's owed them a duty, nor can they prove that Fat Smitty's was a proximate cause of their injuries; (3) Steven Fell engaged in

witness tampering by messaging Welker-Mate, one of the First Street Saloon bartenders, on Facebook and asking that she provide favorable testimony at trial in exchange for money, which warrants a dismissal.

In response to Fat Smitty's claim that their cause of action is time-barred, the Fells argued that the notice provision found in Idaho Code section 23-808(5) is inapplicable because they did not plead a dram shop cause of action, but a common law negligence cause of action. That is, Fat Smitty's, as a tavern keeper, "had a duty to exercise reasonable care to protect its patrons from reasonably foreseeable injury at the hands of other patrons, that [Fat Smitty's] breached that duty, and [that] Mr. Fell's injuries were caused by that breach." Thus, the Fells argued that summary judgment should be denied because there is a genuine issue of material fact whether "(1) Fat Smitty's knew or should have known of LaDonna[] Hall's dangerous propensities; and (2) Fat Smitty's, based on past experiences, should have recognized the likelihood of disorderly conduct by third persons in general which might endanger the safety of the proprietor's patrons."

In response to Fat Smitty's claim that Steven Fell engaged in witness tampering, the Fells argued that relief is only available in such circumstances "when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (quoting *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015)). According to the Fells, Steven Fell's message to Welker-Mate was not done in bad faith; Steven Fell merely wanted "the witnesses [to] provide consistent, honest testimony" at trial.

On April 12, 2019, the district court entered its memorandum decision and order. The court began by addressing whether section 23-808 applied to the facts of the case because "liability . . . will be limited when § 23-808 comes into play." The court held that "[t]here is no genuine dispute that Hall was intoxicated at the time of the incident, thereby implicating § 23-808," including its 180-day notice provision, with which the Fells failed to comply. Thus, the court held that section 23-808(5) precluded the action for failure to give timely notice. Accordingly, the court granted summary judgment in favor of Fat Smitty's without addressing the alternate bases for relief, and dismissed the complaint with prejudice. The Fells timely appealed.

## II. STANDARD OF REVIEW

"This Court exercises *de novo* review of a grant of summary judgment and the 'standard of review is the same as the standard used by the trial court in ruling on the motion for summary judgment.' " *AED, Inc. v. KDC Invest., LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013) (quoting *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 929, 277 P.3d 374, 376 (2012)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Marek v. Hecla, Ltd.*, 161 Idaho 211, 220, 384 P.3d 975, 984 (2016); *see also Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016) ("If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate."). "This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor." *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 209, 76 P.3d 951, 953 (2003).

## III. ANALYSIS

**A. The district court did not err in granting summary judgment to Fat Smitty's because the Fells failed to comply with the Idaho Dram Shop Act, I.C. § 23-808, which is the exclusive remedy for a plaintiff injured by an intoxicated person against the vendor of the alcoholic beverages.**

The Fells contend that the district court erred in granting summary judgment to Fat Smitty's because the Idaho Dram Shop Act, I.C. § 23-808, did not apply in this case since the furnishing of alcohol to an intoxicated patron—the essential characteristic of a claim under the Idaho Dram Shop Act—was not alleged to be a proximate cause of their negligence claim. According to the Fells, they alleged a common law negligence claim based in part on premise liability principles, which is separate and distinct from a Dram Shop Act claim.

Fat Smitty's, on the other hand, contends that when the facts demonstrate that the furnishing of alcoholic beverages may be *a* proximate cause of a plaintiff's injuries, the Dram Shop Act is not only implicated, but also becomes the exclusive remedy for money damages against the furnisher of the alcoholic beverages. Therefore, Fat Smitty's alleges that because Idaho Code section 23-808 applies in this case (since the facts in the complaint demonstrate that the furnishing of alcoholic beverages to an intoxicated person may have been *a* proximate cause

4

of the Fells' injuries), and because the Fells failed to comply with the notice provision found in section 23-808(5), summary judgment was appropriate. We agree with the district court's conclusion that the Idaho Dram Shop Act applies where the facts demonstrate that a dram shop or social host's furnishing of alcoholic beverages may have been a proximate cause of a plaintiff's injuries.

Initially, we note that "[t]he interpretation of a statute is a question of law this Court reviews de novo." *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019).

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*State v. Dunlap*, 155 Idaho 345, 361–62, 313 P.3d 1, 17–18 (2013). "A statute is ambiguous where the language is capable of more than one reasonable construction." *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 896, 265 P.3d 502, 509 (2011) (quoting *Porter v. Bd. of Trustees, Preston Sch. Dist. No. 201*, 141 Idaho 11, 14, 105 P.3d 671, 674 (2004)). "[I]f the statute is ambiguous, this Court must engage in statutory construction to ascertain legislative intent and give effect to that intent." *Saint Alphonsus Reg'l Med. Ctr. v. Gooding Cty.*, 159 Idaho 84, 87, 356 P.3d 377, 380 (2015).

Even when addressing an ambiguous statute, the courts "are not free to rewrite a statute under the guise of statutory construction." *State v. Doe*, 147 Idaho 326, 329, 208 P.3d 730, 733 (2009).

> To ascertain the legislature's intent, this Court examines the literal words of the statute, the context of those words, the public policy behind the statute, and the statute's legislative history. [*State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999)]. Courts must construe a statute "under the assumption that the legislature knew of all legal precedent and other statutes in existence at the time the statute was passed." *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 126 Idaho 145, 150, 879 P.2d 1078, 1083 (1994). Finally, Idaho has recognized the rule of *expressio unius est exclusio alterius*—"where a constitution or statute specifies certain things, the designation of such things excludes all others." *Local 1494 of the Int'l Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978).

*Saint Alphonsus Reg'l Med. Ctr.*, 159 Idaho at 87, 356 P.3d at 380.

Although we begin with the literal words of a statute when interpreting it, it is instructive in this case to first begin with a brief overview of the state of the law prior to the enactment of the Idaho Dram Shop Act:

> In *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969), this Court first addressed the issue of the liability of vendors of intoxicants for the torts of their customers. We held that there was no liability because the vending of intoxicants was not the proximate cause of the damage. "It is nearly universally held that it is the consumption of intoxicants that constitutes the proximate cause of damage to third parties resulting from the tortious or unlawful acts of the consumer and that the vending of intoxicants is too remote to be considered a proximate cause." 93 Idaho at 392, 462 P.2d at 57 (citations omitted). We next considered the issue in *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980). We noted that a claim for negligence was comprised of four elements, which we stated as follows: "(1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." 101 Idaho at 619, 619 P.2d at 137. We then overruled *Meade v. Freeman*, stating, "We therefore declare that that decision, to the extent it infers that under common-law rule and present statutes the vending of intoxicants can never be the proximate cause of damage to third parties resulting from the tortious or unlawful acts of the consumer, is overruled." 101 Idaho at 621, 619 P.2d at 139. Thus, both *Meade v. Freeman* and *Alegria v. Payonk* were based upon the issue of whether the vending of intoxicants could be a proximate cause of damage to third parties caused by the consumer of those intoxicants. . . .

*Idaho Dept. of Labor v. Sunset Marts, Inc.*, 140 Idaho 207, 210–11, 91 P.3d 1111, 1114–15 (2004).

In 1986, the legislature enacted Idaho Code section 23-808, also known as the Idaho Dram Shop Act, which outlines the civil liability imposed on a furnisher of alcoholic beverages for a plaintiff's injuries caused by an intoxicated person. Section 23-808 reads as follows:

> LEGISLATIVE FINDING AND INTENT — CAUSE OF ACTION. (1) The legislature finds that it is not the furnishing of alcoholic beverages that is the proximate cause of injuries inflicted by intoxicated persons and it is the intent of the legislature, therefore, to limit dram shop and social host liability; provided, that *the legislature finds that the furnishing of alcoholic beverages may constitute <u>a proximate cause</u> of injuries inflicted by intoxicated persons* under the circumstances set forth in subsection (3) of this section.

> (2) No claim or cause of action may be brought by or on behalf of any person who has suffered injury, death or other damage *caused by an intoxicated person* against any person who sold or otherwise furnished alcoholic beverages to the intoxicated person, except as provided in subsection (3) of this section.

6

(3)  A person who has suffered injury, death or any other damage caused by an intoxicated person, may bring a claim or cause of action against any person who sold or otherwise furnished alcoholic beverages to the intoxicated person, only if:

(a) The intoxicated person was younger than the legal age for the consumption of alcoholic beverages at the time the alcoholic beverages were sold or furnished and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known at the time the alcoholic beverages were sold or furnished that the intoxicated person was younger than the legal age for consumption of the alcoholic beverages; or

(b) The intoxicated person was obviously intoxicated at the time the alcoholic beverages were sold or furnished, and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known that the intoxicated person was obviously intoxicated.

(4)(a) No claim or cause of action pursuant to subsection (3) of this section shall lie on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or representatives.

(b)  No claim or cause of action pursuant to subsection (3) of this section shall lie on behalf of a person who is a passenger in an automobile driven by an intoxicated person nor on behalf of the passenger's estate or representatives.

(5) *No claim or cause of action may be brought under this section against a person who sold or otherwise furnished alcoholic beverages to an intoxicated person unless the person bringing the claim or cause of action notified the person who sold or otherwise furnished alcoholic beverages to the intoxicated person within one hundred eighty (180) days from the date the claim or cause of action arose by certified mail that the claim or cause of action would be brought.*

(6) For the purposes of this section, the term "alcoholic beverage" shall include alcoholic liquor as defined in section 23-105, Idaho Code, beer as defined in section 23-1001, Idaho Code, and wine as defined in section 23-1303, Idaho Code.

(Emphasis added).

The language of section 23-808, when read as a whole, is capable of only one reasonable interpretation: section 23-808 applies in all cases where the facts demonstrate that the furnishing of alcoholic beverages by a dram shop or social host *may* have been *a* proximate cause of a plaintiff's injuries. For example, subsection (2) explains that "[n]o claim or cause of action may be brought by . . . any person who has suffered injury . . . caused by an intoxicated person against any person who . . . furnished alcoholic beverages to

the intoxicated person, except as provided in subsection (3) of this section." Accordingly, in a case involving a bar, such as this one, section 23-808 is implicated whenever the facts indicate that a person was injured by a bar patron, the bar patron was intoxicated, and the bar in question furnished alcohol to the intoxicated bar patron. If those elements are satisfied, then the injured person cannot bring a claim or cause of action against the furnisher of the alcoholic beverages, unless he can demonstrate that at least one of the two exceptions articulated in subsections (3)(a) or (3)(b) applies.

Similarly, subsection (1) explains that it is the legislature's intent "to limit dram shop and social host liability." Had the legislature intended to limit only *certain* dram shop and social host liability, it could have stated so within the text itself. We explained in a prior decision that the Idaho Dram Shop Act "limits liability by stating the circumstances under which the person who sells or otherwise furnishes alcoholic beverages can be held liable for damages caused [by] the intoxicated person." *Sunset Marts, Inc.*, 140 Idaho at 211 n.1, 91 P.3d at 1115 n.1. Therefore, if the facts of the case demonstrate that the Dram Shop Act applies, then the injured person must comply with the remainder of the Act, including its notice provision. *See* I.C. § 23-808(5). The notice provision requires that the injured person notify "the person who sold or otherwise furnished alcoholic beverages to the intoxicated person within one hundred eighty (180) days from the date the claim or cause of action arose by certified mail that the claim or cause of action would be brought." *Id*. If they fail to do so, then their complaint must be dismissed.

The Fells disagree with this interpretation, arguing that section 23-808 is implicated only when the furnishing of alcoholic beverages to an intoxicated person is alleged to be *the* proximate cause. According to the Fells, a separate and distinct common law negligence claim for injuries sustained by a bar patron was recognized by the Court of Appeals in *McGill v. Frasure*, 117 Idaho 598, 599, 790 P.2d 379, 380 (Ct. App. 1990), and reiterated by this Court in *Jones v. Starnes*, 150 Idaho 257, 260, 245 P.3d 1009, 1011 (2011). Although *McGill* and *Jones* both discuss a common law negligence claim available to persons injured by bar patrons, neither case involved facts that would have implicated the Dram Shop Act.

In *McGill*, the plaintiff was a patron of Garfield's bar in Pocatello when another patron physically assaulted her. 117 Idaho at 599, 790 P.2d at 380. McGill sued the owners of Garfield's bar for damages resulting from the assault. *Id.* McGill alleged that the

defendant bar owners negligently failed in their duty as business owners to use reasonable care for her protection. *Id.* The trial court granted the defendants a directed verdict. *Id.* McGill appealed. *Id.* In vacating and remanding the trial court's decision, the Court of Appeals relied on a tavern keeper's duty to exercise reasonable care to protect its patrons from reasonably foreseeable injury at the hands of other patrons, rather than the Dram Shop Act. *Id.* at 601, 790 P.2d at 382. The Idaho Dram Shop Act was not implicated in *McGill* because neither alcohol nor the service of alcohol was alleged to be a factor in the assault, which makes it distinguishable from this case and every dram shop case.

The same is true with our decision in *Jones.* In that case, the Joneses went to pick up a friend from Boomers bar in Lewiston. *Jones*, 150 Idaho at 259, 245 P.3d at 1011. While waiting in their truck, a group of bar patrons spilled out of the bar, requiring Mr. Jones to exit his vehicle to try to clear a path for the truck to leave. *Id.* Mr. Jones was struck in the face by a member of the group. *Id.* The Joneses filed a complaint against the owners of Boomers, alleging negligence. *Id.* The district court granted summary judgment to Boomers, holding that the Joneses had failed to provide sufficient evidence to show Boomers owed a duty to Mr. Jones. *Id.* The Joneses appealed. *Id.* On appeal, we explained that "every person, in the conduct of his or her business, has a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others." *Id.* at 260, 245 P.3d at 1012 (quoting *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999)). We also referred to the Court of Appeals' decision in *McGill*. In affirming the trial court, we held that, "even if Mr. Jones was a patron and the injury occurred on the premises, the assault was not foreseeable because there is no evidence that Boomers had knowledge of the unknown assailant's violent propensities." *Id.*

Once again, the Dram Shop Act did not apply in *Jones* because the providing of alcohol by Boomers was not a factor in the alleged tort. In a footnote, we explained that the Joneses argued before the district court that a duty was owed by Boomers to Mr. Jones under the Idaho Dram Shop Act. *Id.* at 260 n.1, 245 P.3d at 1012 n.1. However,

> [t]he district court held that the Dram Shop Act was inapplicable because the Appellants had failed to assert any facts that would show "(1) that the assailant had been a patron of Boomers and (2) that Boomers' employees furnished alcohol beverages to the assailant when they knew or should have reasonably known that the assailant was obviously intoxicated" as required under the Act.

9

*Id.* Accordingly, we did not address the Dram Shop Act because the Joneses "ma[d]e no argument in their briefs to this Court that the district court was incorrect in its conclusion." *Id.* We also mentioned that "the Joneses cannot provide any evidence that Boomers served alcohol to the unknown assailant or that the unknown assailant was already intoxicated." *Id.* at 263, 245 P.3d at 1015. Accordingly, similar to *McGill*, the providing of alcohol was not a factor in *Jones*, and therefore, the Dram Shop Act did not apply.

Unlike *McGill* and *Jones*, alcohol and the service of alcohol was undeniably a factor in this case, thereby squarely implicating the Dram Shop Act. For example, in the demand letter sent to Fat Smitty's, the Fells asserted that "LaDonna Hall and her mother arrived at the bar and drank heavily, both becoming highly intoxicated" and that the bartenders "knew that LaDonna Hall was extremely intoxicated, to [the] point where she was a danger to the other patrons." The Fells alleged that Fat Smitty's breached its duty to Steven Fell when it "continued to serve LaDonna additional drinks" and failed to "remove her from the bar." Additionally, alcohol and the service of alcohol was mentioned several times throughout the complaint. For example, the Fells alleged that "LaDonna Hall[] had been drinking heavily throughout the evening," "Fat Smitty's did not train its agents or employees on . . . how to refuse service to a customer," and "Fat Smitty's breached its duty to the Fells by failing to cease service to LaDonna Hall and/or remove her from Bar premises." Further, the Declaration of Angela Burke, submitted by the Fells in response to Fat Smitty's motion for summary judgment, alleged that the First Street Saloon had been informed earlier that "Hall … likes to start fights and can be a problem if she is drunk." Even more telling is the Declaration of Alex Clawson, who testified: "I served LaDonna Hall multiple drinks on the night of November 26-27, 2016, and I observed that later in the night she was very intoxicated" and that he "received no training from Fat Smitty's, L.L.C, its owners, or its managers regarding when to stop serving alcohol to a bar patron."

In light of such undisputed evidence from the Fells' own witnesses, the district court appropriately granted summary judgment to Fat Smitty's. To rule otherwise would have resulted in a trial, wherein the jury would have been tasked with determining the proximate cause of the Fells' injuries. Even if Fells presented no evidence of intoxication in their case-in-chief at trial, Fat Smitty's certainly would have been entitled to do so in their defense. Based on the undisputed evidence in the record, while it is possible that a jury could

conclude that intoxication was not *the* proximate cause of the Fells' injuries, no reasonable view of the facts could sustain a verdict that intoxication was not *a* proximate cause. Drawing all reasonable inferences in the Fells' favor, there is simply no genuine issue of material fact whether intoxication played a role—likely a large one—in this tragic incident. Therefore, the district court correctly concluded that Fat Smitty's was entitled to summary judgment as a matter of law.

Accordingly, we affirm the district court's ruling that the Dram Shop Act applied in this case, thereby requiring the Fells to notify Fat Smitty's of their intent to file a claim against them within 180 days of the incident.[1] Because they failed to do so, summary judgment was appropriate. In light of the ruling, it is unnecessary to address the alternative grounds for summary judgment asserted by Fat Smitty's on appeal.

### B. Fat Smitty's is not entitled to attorney fees on appeal.

Fat Smitty's requests attorney fees on appeal pursuant to Idaho Appellate Rules 35(b)(5), 40, 41(a), Idaho Rule of Civil Procedure 54(e)(2), and Idaho Code section 12-121. According to Fat Smitty's, attorney fees are appropriate because the Fells' arguments lack any legal or factual foundation and are presented without persuasive argument since the Idaho Dram Shop Act unquestionably applies based on a plain reading of its provisions and the complaint. Idaho Code section 12-121 permits the Court to award attorney fees to the prevailing party "when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." The Fells did not bring a frivolous, unreasonable, or unfounded appeal. The Fells have raised unique issues concerning the proper interpretation and application of the Idaho Dram Shop Act. Accordingly, although Fat Smitty's was the prevailing party in this appeal, the Fells had a reasonable basis upon which to challenge the interpretation of the Idaho Dram Shop Act. Therefore, we decline to award attorney fees.

## IV.    CONCLUSION

We affirm the district court's grant of summary judgment to Fat Smitty's. We award costs to Fat Smitty's.


Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**

---

[1] Our decision today illuminates at least one troubling weakness in Idaho's Dram Shop Act: the statutory language may unintentionally provide a perverse incentive for dram shops and social hosts to provide alcohol to individuals known to be dangerous in order to access the procedural benefits conferred by the Act.

11