# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 50703

| | | |
|---|---|---|
| **In Re: Certification of Question of Law.** | ) | |
| ------------------------------------------------------ | ) | |
| | ) | |
| **LORI S. BLASCH,** | ) | |
| | ) | |
|     **Plaintiff-Appellant,** | ) | **Boise, November 2023 Term** |
| | ) | |
| **v.** | ) | **Opinion filed: March 21, 2024** |
| | ) | |
| **HP, INC. D/B/A HP COMPUTING** | ) | **Melanie Gagnepain, Clerk** |
| **AND PRINTING, and JOHN/JANE** | ) | |
| **DOES I-V, whose true identities are** | ) | |
| **presently unknown,** | ) | |
| | ) | |
|     **Defendants-Respondents.** | ) | |
| | ) | |

Certified Question of Law from the United States District Court, District of Idaho. Debora K. Grasham, Magistrate Judge.

Certified question of law is answered.

Monteleone Law Offices, P.L.L.C., Boise, Idaho, for Appellant. Jason Monteleone argued.

Littler Mendelson, P.C., San Jose, California, for Respondent. Susan Fitzke argued.

---

BEVAN, Chief Justice.

This matter comes to the Supreme Court as a certified question of law from the U.S. District Court for the District of Idaho, which seeks to clarify the appropriate point of accrual for wage discrimination claims arising under the Idaho Human Rights Act, Idaho Code section 67-5901 *et seq.*, and the Idaho Equal Pay Act., Idaho Code section 44-1701 *et seq.* Plaintiff Lori S. Blasch filed a complaint against Defendant HP, Inc., alleging retaliation and violations under the Idaho Human Rights Act ("IHRA") and wage discrimination and retaliation under the Idaho Equal Pay Act[1] ("IEPA").

---

[1]The Idaho Equal Pay Act was formerly known as the Discriminatory Wage Rates Based Upon Sex Act.

1

Claims under the IHRA are time-barred unless brought within one year of the discriminatory act, but the language of the IEPA does not include a specific limitations period. The U.S. District Court order certifying the question to this Court relied on the Human Rights Commission's ("Commission") Idaho Administrative Procedure Act ("IDAPA") rules to conclude that wage discrimination claims arising under the IEPA are subject to the same one-year limitation period as the IHRA. However, this remains an open question that we resolve below.

Citing the United States Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), HP argues that Blasch's claims are time-barred because she did not file within one year of HP's alleged discriminatory pay-setting decision. Blasch counters that her claim is timely because it was filed within one year of her last paycheck. Blash argues that this is the appropriate standard for accrual of a wage discrimination claim under IDAPA 45.01.01.300.06 as each paycheck was part of a continuing violation. In the alternative, Blasch contends that this is the appropriate accrual point for the one-year period under the "paycheck rule" of the Lilly Ledbetter Fair Pay Act of 2009 ("Lilly Ledbetter Act"), Pub. L. No. 111-2, 123 Stat 5. The U.S. District Court found no controlling Idaho law on point and issued an order certifying the question of law to this Court for resolution.

## I. Factual and Procedural Background

### A. Factual Background

Blasch began working for HP in October 2010 as an industrial designer in the color material and finish department. Blasch alleges that, beginning in 2015, she and the other female employees in this department were subjected to gender discrimination and harassment by the department's male director.

The disputed allegations Blasch made in support of her wage discrimination claim against HP include: (1) she and other female employees were reprimanded for working from home, but male employees were not similarly reprimanded; (2) work assignments were taken away from female employees and given to male employees without explanation; and (3) before notifying employees of their termination, an HP director shared a list of employees showing that most of the women in the department would be terminated. Blasch also alleged that she was denied travel and classes for her job, while many men in her department were permitted to travel and attend classes regularly. Blasch asserted that she was taken off a particular project, told not to work on that project, and then reprimanded and placed on a performance improvement plan when, because of

2

her absence on that project, the project responsibilities were not sufficiently administered. Blasch also alleged that she was paid $94,000 a year when her employment was terminated, while at least two comparable male industrial designers were paid $130,000 for comparable jobs with similar requirements relating to skill, effort, and responsibility. She alleged that she was retaliated against, and ultimately terminated for, voicing legitimate concerns about the gender-based pay disparity. HP disputed each of Blasch's allegations. HP also asserted that Blasch's first amended complaint did not make any factual allegations regarding her pay or the pay of any similarly situated male employees.

HP states that Blasch was selected for workforce reduction in November 2018 for non-discriminatory reasons. Blasch was notified of this decision on November 5, 2018, and her employment with HP ended on November 16, 2018. Blasch states that she received her last paycheck from HP on December 13, 2018.

### B. Procedural Background

In response to the alleged discrimination, Blasch filed a Charge of Discrimination ("Charge") with the Commission, and alleged that HP engaged in unlawful workplace discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the IHRA, and the IEPA.

Blasch's first Charge was signed by her attorney—rather than by Blasch herself—and filed on November 12, 2019. Blasch later filed an Amended Charge of Discrimination ("Amended Charge") with the Commission that she signed under oath. The Commission initially found that Blasch's November 12 Charge was untimely and that there was no probable cause showing illegal discrimination. After Blasch filed for reconsideration, the Commission found that Blasch's November 12 Charge was timely, that probable cause existed for one of her alleged grounds of illegal discrimination, and, accordingly, issued Blasch a notice of right to sue.

Blasch filed a complaint (and later an amended complaint) in U.S. District Court against HP alleging: (1) a claim for wage discrimination and retaliation in violation of the IEPA; and (2) a claim for "employment violation of" and retaliation in violation of the IHRA and Title VII of the Civil Rights Act of 1964. HP moved to dismiss Blasch's complaint, arguing Blasch failed to timely exhaust all administrative remedies by failing to timely file her Charge with the Commission. Blasch conceded that her Title VII claims—which had to be filed with the Commission within 300

3

days of the alleged violation—were untimely and should be dismissed. Therefore, Blasch's only remaining claims are state law claims arising under the IHRA and IEPA.

Before the federal court, the parties agreed that claims under the IHRA and IEPA are barred unless filed within one year of the alleged violation. Thus, their arguments at the motion to dismiss hearing centered on what act or event triggered the running of the statute of limitations on Blasch's wage discrimination[2] claims. The U.S. District Court asked both sides whether certifying this question of Idaho law to the Idaho Supreme Court would be helpful. Despite both parties' acknowledgment that there was no controlling Idaho law on the issue, both sides responded that their positions were correct, and that certification was unnecessary. The U.S. District Court ultimately certified the question to this Court.

## II. CERTIFIED QUESTION OF LAW

What is the appropriate point of accrual for wage discrimination claims arising under the Idaho Human Rights Act, I.C. § 67-5901 *et seq.*, and the Idaho Equal Pay Act, I.C. § 44-1701 *et seq.*?

## III. STANDARDS OF REVIEW

Federal courts may certify a question of law to this Court asking for a declaratory judgment or decree adjudicating the Idaho law on such a question if the certified question is a controlling question of law and there is no controlling precedent in the decisions of this Court. I.A.R. 12.3. Because the only issue here is a question of law, this Court exercises free review of the applicable law. *St. Luke's Magic Valley Reg'l Med. Center v. Luciani*, 154 Idaho 37, 40, 293 P.3d 661, 664 (2013) (citing *Harrigfeld v. Hancock*, 140 Idaho 134, 136, 90 P.3d 884, 886 (2004)). "When the 'question presented is a narrow one,' as it is here, '[o]ur role is limited to answering the certified question.'" *Id.* (quoting *Peone v. Regulus Stud Mills, Inc.,* 113 Idaho 374, 375, 744 P.2d 102, 103 (1987) (cautioning that "to now decide [extraneous matters] would result in an advisory opinion on a question not certified")).

The basic rule of statutory construction is that courts must first look to the language of the statute to determine the legislature's intent. *Fell v. Fat Smitty's LLC*, 167 Idaho 34, 38, 467 P.3d 398, 402 (2020); I.C. § 73-113(1). Only if a statute is ambiguous—or capable of more than one

---

[2] It is not clear from the record that Blasch's complaint includes a wage discrimination claim under the IHRA. That issue has not been addressed by the U.S. District Court. Even so, that court wrote in its Order that "[a]t oral argument, the parties' argument focused on the proper point of accrual analysis for Plaintiff's wage discrimination claims under the IHRA and IEPA."

reasonable construction—will this Court engage in statutory construction to ascertain legislative intent. *Fell*, 167 Idaho at 38, 467 P.3d at 402. Even where a statute is ambiguous, courts "are not free to re-write a statute under the guise of statutory construction." *Id.* (quoting *State v. Doe*, 147 Idaho 326, 329, 208 P.3d 730, 733 (2009)). To ascertain the legislature's intent, the Court "will examine[] the literal words of the statute, the context of those words, the public policy behind the statute, and the statute's legislative history." *Id*. (citation omitted).

## IV. ANALYSIS

The certified question asks the Court to determine the appropriate point of accrual for wage discrimination claims arising under the Idaho Human Rights Act and the Idaho Equal Pay Act. The U.S. District Court order certifying the question to this Court relied on IDAPA rules promulgated by the Commission to conclude that wage discrimination claims arising under the IEPA are subject to the same one-year limitation period stated in the statutory text of the IHRA. The Order also suggested that the point of accrual for wage claims could be the same for both statutes. But as explained below, our review of the statutes concludes that the limitation period and point of accrual for each statute are discrete and must be analyzed separately.

This Court may reformulate the certified question as it deems appropriate. *See Booker v. The Boeing Co.*, 188 S.W.3d 639, 642 (Tenn. 2006) (rephrasing question certified by the U.S. District Court for the Eastern District of Tennessee); *see also Dindinger v. Allsteel, Inc.*, 860 N.W.2d 557, 560 (Iowa 2015). Therefore, to better analyze the limitation period and point of accrual for each statute separately, we reframe the certified question into two questions as follows:

(1) What is the appropriate point of accrual for wage discrimination claims under the Idaho Human Rights Act, Idaho Code section 67-5901 *et seq.*?

(2) What is the statute of limitations and appropriate point of accrual for wage discrimination claims under the Idaho Equal Pay Act, Idaho Code section 44-1701 *et seq.*?

As explained below, we hold that the IHRA's one-year limitation period begins when the pay-setting decision is made, and that the IEPA (which does not specify a limitation period in the statutory text) has a four-year limitation period pursuant to Idaho Code section 5-224 that begins anew when the employee receives each discriminatory paycheck.

### A. The Idaho Human Rights Act

The first question requires that we determine the appropriate point of accrual for wage discrimination claims under the IHRA. However, as a threshold matter, HP took the position at

oral argument that this Court need not reach the IHRA issue because Blasch failed to plead a claim for wage discrimination under the IHRA in her complaint. Blasch disagrees, arguing that she stated a claim for general discrimination under the IHRA before the U.S. District Court. Therefore, before deciding this question, we must first determine whether answering that question would result in an advisory opinion.

*1. Answering the certified question does not constitute an advisory opinion.*

"This Court is not empowered to issue purely advisory opinions." *Taylor v. AIA Services Corp.*, 151 Idaho 552, 569, 261 P.3d 829, 846 (2011) (quoting *MDS Invs., L.L.C. v. State,* 138 Idaho 456, 464–65, 65 P.3d 197, 205–06 (2003)). We note that deciding matters outside the certified question results in an advisory opinion on a question not certified. *Luciani*, 154 Idaho at 40, 293 P.3d at 664 (citing *Peone*, 113 Idaho at 375, 744 P.2d at 103). If "the parties in their briefs and arguments before this Court present [ ] facts outside" the certification order, we consider "only those facts contained in the order." *Id*. (quoting *Kunz v. Utah Power & Light Co.*, 117 Idaho 901, 902 n.1, 792 P.2d 926, 927 n.1 (1990)). Federal courts "are bound by the answers of state supreme courts to certified questions just as [they] are bound by state supreme court interpretations of state law in other contexts." *Reinkemeyer v. SAFECO Ins. Co. of Am.*, 166 F.3d 982, 984 (9th Cir. 1999) (rejecting a party's request to ignore the state supreme court's answer to a certified question).

Blasch's complaint and first amended complaint include a heading stating: "Second Cause of Action – Employment Violation of and Retaliation in Violation of … The Idaho Human Rights Act." Blasch's assertions in that section focus on retaliation and do not mention wage discrimination. But Blasch's memorandum in opposition to HP's motion to dismiss raised arguments relating to both a claim of "gender discrimination under the IHRA," and "claims for wage discrimination under the IEPA and the IHRA." HP argued in its reply memorandum that, "to the extent that Plaintiff now argues that she has an IHRA gender discrimination claim that should survive this motion, it must be noted that Plaintiff's [First Amended Complaint], on its face, contains no such claim."

The U.S. District Court's Order does not discuss that point or suggest that Blasch's IHRA wage discrimination claim was not sufficiently pleaded. Instead, the Order refers to Blasch's IHRA claim first as a retaliation claim and later as a wage discrimination claim. On page 3, the Order reads:

> Plaintiff filed a Complaint against Defendants on March 9, 2022 (Dkt. 2), and an Amended Complaint on July 25, 2022, alleging: (1) a claim for wage discrimination

6

in violation of the IEPA . . . ; and (2) a claim for *retaliation* in violation of the IHRA and Title VII. . . .

(Emphasis added). The next page of the order states that, because Blasch concedes her Title VII claim is untimely, "only Plaintiff's state law *wage discrimination* claims arising under the IHRA and IEPA remain." (Emphasis added).

The U.S. District Court has apparently concluded that Blasch may have a valid IHRA wage discrimination claim, and on that basis asked this Court to determine when such a claim accrues. We will thus answer the question posed to us. Therefore, this Court's opinion is not advisory. Having determined that deciding this issue does not amount to an advisory determination, we turn to our analysis of the proper point of accrual for an IHRA wage discrimination claim.

> *2. A claim for wage discrimination under the IHRA accrues when the pay-setting decision is made and communicated to the employee.*

The first certified question, as rephrased by this Court, asks us to determine the appropriate point of accrual for wage discrimination claims under the IHRA. As stated previously, the IHRA requires that claims for discrimination must be filed within one year of the alleged discrimination:

> (1) Any person who believes he or she has been subject to unlawful discrimination, or a member of the commission, may file a complaint under oath with the commission stating the facts concerning the alleged discrimination within one (1) year of the alleged unlawful discrimination.

I.C. § 67-5907(1).

The IHRA also states that a claimant who wishes to file suit in district court must first exhaust their administrative remedies by filing a complaint (which the Commission refers to as a "Charge of Discrimination") with the Commission within one year of the alleged discrimination:

> (2) A complaint must be filed with the commission as a condition precedent to litigation. A complainant may file a civil action in district court within ninety (90) days of issuance of the notice of administrative dismissal pursuant to section 67-5907(6), Idaho Code.

I.C. § 67-5908(2).

However, the IHRA does not specify what act or event triggers the start of the one-year statute of limitations. The statute merely states:

> It shall be a prohibited act to discriminate against a person because of, or on a basis of, race, color, religion, sex or national origin, . . .
> . . .
> > (1) For an employer to fail or refuse to hire, to discharge, or to otherwise discriminate against an individual with respect to compensation or the

7

terms, conditions or privileges of employment or to reduce the wage of any employee in order to comply with this chapter. . . .

I.C. § 67-5909(1). The statute prohibits "otherwise discriminat[ing] against an individual with respect to compensation," but it does not specify what acts constitute wage discrimination or how those acts trigger the one-year statute of limitations.

"Where a statute's language is unambiguous, the intent of the legislative body must be given effect and this Court need not consider rules of statutory construction." *State v. Doe (2022-15)*, 172 Idaho 592, ___, 535 P.3d 568, 571 (2023) *(citing State v. Burke*, 166 Idaho 621, 623, 462 P.3d 599, 601 (2020)). "[A] statute is ambiguous where the language is capable of more than one reasonable construction." *Id.* (citing *State v. Amstad*, 164 Idaho 403, 405, 431 P.3d 238, 240 (2018)). When a statute is found ambiguous, legislative intent is determined by examining the words of the statute, context of the words, the statute's public policy goals, and the legislative history of the statute. *Fell*, 167 Idaho at 38, 467 P.3d at 402 (citation omitted). But the Court may not rewrite a statute "under the guise of statutory construction." *Id.* (quoting *State v. Doe*, 147 Idaho 326, 329, 208 P.3d 730, 733 (2009)).

The general purpose of the IHRA is to execute "the policies embodied in the federal Civil Rights Act of 1964, as amended." I.C. § 67-5901(1). As we held in *Mackay v. Four Rivers Packing Co.*, we may look to federal law "for guidance in interpretation of the state provisions [of the IHRA]." 145 Idaho 408, 413, 179 P.3d 1064, 1069 (2008) (citing *O'Dell v. Basabe*, 119 Idaho 796, 811, 810 P.2d 1082, 1097 (1991)).

The parties point to competing sources of federal law as the basis of that guidance. HP argues that where the language of the IHRA is unchanged since it was originally adopted in 1969, the United States Supreme Court's holding in *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 622, 628 (2007), which analyzed very similar statutory language under Title VII of the Federal Civil Rights Act, sets the appropriate standard for the accrual point. The Court in *Ledbetter* held that the statute of limitations for wage discrimination claims begins to run when the pay-setting decision is made and communicated to the employee.

Blasch disagrees and offers two alternate points of accrual. First, she argues that *Ledbetter* is a poor source for federal guidance because Congress acted swiftly to overturn the *Ledbetter* decision when it passed the Lilly Ledbetter Act in 2009. The Lilly Ledbetter Act expanded the definition of "unlawful employment practice" to include "when an individual is affected by application of a discriminatory compensation decision or other practice, including each time

8

wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." Pub. L. No. 111-2, 123 Stat 5-6. Thus, Blasch contends that the federal policy is more aptly stated in the Lilly Ledbetter Act, making clear that federal wage discrimination claims begin to accrue when the employee receives their last discriminatory paycheck. This is often called the "paycheck rule." Blasch argues that the paycheck rule is the more appropriate rule of accrual since the IHRA is a remedial statute, which should be interpreted broadly in favor of its remedial purposes. *See Eller v. Idaho State Police*, 165 Idaho 147, 156-57, 443 P.3d 161, 170-71 (2019); *Eastman v. Farmers Ins. Co.*, 164 Idaho 10, 14, 423 P.3d 431, 170 (2018).

Second, Blasch argues that wage discrimination happens incrementally, and results in cumulative harm to the employee, so it is correctly understood as a "continuing violation" for which the appropriate accrual date would be the last discriminatory paycheck. Under IDAPA 45.01.01.300.06, continuing violation claims of discrimination accrue on "any date subsequent to the commencement of the unlawful practice up to and including the date on which the complaint is filed if the alleged unlawful discrimination continues." Blasch asserts that the wage discrimination continued until she received her final paycheck and, therefore, the continuing violation rule also supports the date of her last paycheck as the accrual point of her claim.

HP counters that the Idaho Legislature did not choose to amend the IHRA in the same way that Congress amended Title VII when it adopted the Lilly Ledbetter Act. HP further notes that "[e]ven when addressing an ambiguous statute, the courts are not free to rewrite a statute under the guise of statutory construction." *Fell*, 167 Idaho at 38, 467 P.3d at 402.

As discussed above, the IHRA, as it has read since 1969, states that one of the "general purposes of this chapter" is:

> To provide for execution within the state of the policies embodied in the federal Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended, and Titles I and III of the Americans with Disabilities Act.

I.C. § 67-5901(1). As noted, Congress amended Title VII of the federal Civil Rights statute with the Lilly Ledbetter Act to adopt the paycheck rule. But, as HP argues, the Idaho Legislature has never acted similarly to amend the IHRA to adopt the paycheck rule, even though it amended the law in 2005 to expand protections for disabled people.[3] 2005 Idaho Sess. Laws 869-77. As it relates

---

[3] Susan E. Park & Doug A. Werth, *The Idaho Human Rights Act Is Long Overdue for A Legislative Update*, 64 THE ADVOCATE 16 (2021) ("The Idaho Legislature has not made a meaningful amendment to the [Idaho Human Rights] Act since 2005, when it expanded protections for persons with disabilities. It has neglected to update the IHRA after

to wage discrimination claims, the IHRA reads the same as it did when the U.S. Supreme Court analyzed Title VII wage claims in *Ledbetter*. We conclude that the *Ledbetter* approach remains applicable to wage claims under the IHRA because that Court analyzed a statute very similar to section 67-5901 and came to a reasoned decision, the logic of which we apply today.

In reaching this conclusion, we find that Blasch's arguments are inapt. First, we do not hold that receipt of allegedly discriminatory paychecks constitutes an ongoing, continuing violation. This conclusion is sustained by the Supreme Court's decision in *Ledbetter* where, interpreting language very similar to that of the IHRA, the Court held that the pay-setting decision, occurring at a determinable point in time, is the proper point of accrual for Title VII wage claims. *See* 550 U.S. at 621.

Second, we acknowledge that the Lilly Ledbetter Act, adopted specifically in response to *Ledbetter*, sets a standard for which Blasch argues here. But the Idaho Legislature has chosen not to act in light of *Ledbetter*, even though it has had fourteen legislative sessions to do so—and even though it amended the law in 2005 to expand protections for disabled people. We interpret Idaho's statute as it has existed for over fifty years, rather than against the backdrop of a federal act that Idaho has not adopted.

Additionally, while we acknowledge that the IHRA is a remedial statute, that fact alone does not allow us to ignore the principles from *Ledbetter* that we apply here. While each paycheck was allegedly discriminatory in effect, the wage discrimination claim accrues when the pay-setting decision is communicated to the employee. We reject the more liberal interpretation that would amount to this Court amending the IHRA to be consistent with the Lilly Ledbetter Act—which would be a step too far, even for this remedial legislation.

We therefore hold that wage discrimination claims arising under the IHRA are not a continuing violation that occurs with the issuance of each paycheck. Instead, we conclude IHRA wage discrimination claims arise from a discrete act, and that the one-year limitation period begins when the discriminatory pay-setting decision is made and communicated to the employee.

---

landmark federal enactments such as the Pregnancy Discrimination Act of 1978, the Civil Rights Act of 1991, *the Lilly Ledbetter Fair Pay Act of 2009*, and the Americans with Disabilities Act Amendments Act of 2008."). (Emphasis added)).

**B. The Idaho Equal Pay Act**

The second certified question requires us to determine the applicable statute of limitations and appropriate point of accrual for wage discrimination claims under the IEPA.

*1. The IEPA limitations period is governed by the four-year period laid out in Idaho Code section 5-224.*

Unlike the IHRA, the IEPA does not include a specific statute of limitations. Even so, the rules promulgated by the Idaho Human Rights Commission purport to establish a one-year limitation period for both statutes. IDAPA 45.01.01.001.02 states that "[t]hese rules cover practice before the Idaho Human Rights Commission . . . pertaining to alleged violations of the Idaho Human Rights Act . . . and the [Idaho Equal Pay] Act . . . ." IDAPA 45.01.01.300 later states that "a complaint must be filed within one (1) year of the alleged unlawful discrimination." On their face, these rules suggest that claims arising under IEPA are subject to a one-year limitation period.

But as we will explain, an administrative rule cannot establish the limitation period because the Idaho Legislature, in *statute*, has established statutes of limitations for all causes of action arising under Idaho law, and this Court has held that administrative rules are "lesser than" statutes. Therefore, no administrative rule can override the statutory limitations scheme established by Idaho Code title 5, chapter 2, which includes the catchall statute of limitations contained in section 5-224.

Idaho Code title 5, chapter 2 sets out a comprehensive statute of limitations scheme governing civil actions arising under Idaho law. Idaho Code section 5-201 provides that "[c]ivil actions can only be commenced within the periods *prescribed in this chapter* after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed *by statute*." (Emphasis added.)

Thus, section 5-201 creates only two possible sources of the limitation period that can apply to any given cause of action: (1) a limitation period prescribed in Idaho Code title 5, chapter 2, or (2) a limitation period prescribed by another statute. This creates a framework for determining the applicable limitation period for any cause of action. We first look to whether a "special case" exists where the limitation period is provided by a statute outside of title 5, chapter 2, because a "basic tenet of statutory construction is that the more specific statute or section addressing the issue controls over the statute that is more general." *Valiant Idaho, LLC v. JV L.L.C.*, 164 Idaho 280, 289, 429 P.3d 168, 177 (2018) (citation omitted). If a "special case" exists where a more specific statute prescribes the limitation period, we apply that statute of limitations.

11

But if no such "special case" exists, the limitation period is determined by the relevant statute of limitations provided in title 5, chapter 2. Title 5, chapter 2 includes a range of statutes limitations governing specific causes of action. For example, Idaho Code section 5-203 provides the limitation period for actions to recover real property, and Idaho Code section 5-216 provides the limitation periods for actions on a written contract. If one of these statutes governs the cause of action at issue, then our analysis is complete. *See Valiant Idaho, LLC*, 164 Idaho at 289, 429 P.3d at 177 (citation omitted).

In some cases, however, none of the limitation periods governing specific causes of action in title 5, chapter 2 are relevant to the litigation at issue. Under those circumstances, Idaho's catchall statute of limitation controls. The catchall limitations statute provides that "[a]n action for relief not hereinbefore provided for must be commenced within four (4) years after the cause of action shall have accrued." I.C. § 5-224. We have held that section 5-224 "unequivocally provides the statute of limitations for '*all* [civil] actions not specifically provided for in another statute.'" *Easterling v. HAL Pac. Props., L.P.*, 171 Idaho 500, 511, 522 P.3d 1258, 1269 (2023) (alteration in original) (citation omitted).

Here, HP argues that although the text of the IEPA does not provide a limitation period, the Commission has authority to establish the one-year limitation period in its rules for claims brought under the IEPA. But the statutory scheme set forth in section 5-201 leaves no authority for agencies to promulgate rules providing a limitation period, and the catchall statute of limitations covers all causes of action not otherwise addressed in title 5, chapter 2. For over thirty years, and as recently as this year, this Court has held that that administrative rules "'do not rise to the level of statutory law' and are 'less than the equivalent of statutory law.'" *Idaho State Athletic Comm'n by & through Stoddard v. Off. of the Admin. Rules Coordinator*, ___ Idaho ___, 543 P.3d 718, 732 (2024) (citation omitted). Because section 5-224 provides the statute of limitations for all cases not otherwise addressed by the legislature in title 5, chapter 2, the Commission's administrative rules are of no moment in attempting to provide the limitation period for cases arising under the IEPA.

In the alternative, HP argues that we should apply the one-year limitation period contained in the Idaho Wage Claim Act, Idaho Code section 45-614, rather than the catchall limitation period contained in section 5-224, to claims arising under the IEPA. HP argues that the language of the

Wage Claim Act is broad enough to encompass claims for wage discrimination arising under the IEPA. We disagree.

Blasch did not plead a violation of the Wage Claim Act; she pleaded a violation of the IEPA. The IEPA specifically addresses wage discrimination claims, while the Wage Claim Act does not. Indeed, no provision of the Wage Claim Act discusses wage discrimination. As we have explained, a more specific statute controls over a more general statute. *See Valiant Idaho, LLC*, 164 Idaho at 289, 429 P.3d at 177 (citation omitted). Because Blasch pleaded a violation of the IEPA, and the IEPA is the more specific statute governing Blasch's allegations, HP's argument that we should apply the limitation period from the Wage Claim Act is unavailing.

To determine the limitation period for the IEPA, we apply the statutory scheme set forth in Idaho Code section 5-201. We repeat that the text of the IEPA does not include a limitation period. Therefore, the IEPA is not a "special case" where the limitation period is prescribed by a statute outside of title 5, chapter 2. *See* I.C. § 5-201. Accordingly, the statutes of limitation in title 5, chapter 2 control. *See id*. HP has not argued that any of the limitations periods for specific causes of action enumerated in title 5, chapter 2 apply, and we have found none on our own review. Thus, Idaho's catchall statute of limitation in section 5-224 applies. We therefore hold that claims under the IEPA are subject to the four-year statute of limitation in section 5-224.

*2. The IEPA point of accrual is each discriminatory paycheck.*

The last issue to resolve is the appropriate point of accrual for claims arising under the IEPA. HP's argument on this point resembles its earlier arguments on the same issue under the IHRA. HP argues that because the Idaho Legislature did not amend the IEPA to adopt the paycheck rule, the *Ledbetter* opinion holding that the pay-setting decision triggers the limitation period applies with equal force to the IEPA.

Blasch points out that even the *Ledbetter* Court held that wage discrimination claims brought under the federal Equal Pay Act—which it argues is the IEPA's federal counterpart—starts to run with each new discriminatory paycheck. *Ledbetter*, 550 U.S. at 640 ("If Ledbetter had pursued her EPA claims, she would not face the Title VII obstacles she now confronts."). Blasch also argues that the plain language of the IEPA, which refers to "paying wages," shows that an employee has a new cause of action each time she or he is paid a discriminatory wage.

As we have noted throughout this opinion, the foundational rule of statutory construction is that courts first look to the language of the statute to determine the legislature's intent. *Fell*, 167

13

Idaho at 38, 467 P.3d at 402. While the text of the IEPA is silent about the statute of limitations, it is clear as to what act or event causes the claim to accrue, thus triggering the limitation period: the payment of wages. The IEPA establishes that discriminating between employees by paying wages based on sex is prohibited:

> (1) No employer shall discriminate between or among employees in the same establishment on the basis of sex, *by paying wages* to any employee in any occupation in this state at a rate less than the rate at which he pays any employee of the opposite sex for comparable work on jobs which have comparable requirements relating to skill, effort and responsibility. *Differentials which are paid* pursuant to established seniority systems or merit increase systems, which do not discriminate on the basis of sex, are not within this prohibition.

I.C. § 44-1702(1) (emphasis added). When wages are paid in paychecks—as Blasch's wages were paid—we hold that the proper point of accrual for claims arising under the IEPA is when the employee receives a discriminatory paycheck. In summary, we hold that claims under the IEPA are subject to the four-year statute of limitations in Idaho Code section 5-224, and that limitation period begins to run when the employee receives each discriminatory paycheck.

## V. CONCLUSION

We answer the U.S. District Court's certified question, as reframed by this Court into two questions, as follows:

> (1) The appropriate point of accrual for wage discrimination claims under the Idaho Human Rights Act, Idaho Code section 67-5901 *et seq.* is when the pay-setting decision is made and communicated to the employee.

> (2) The statute of limitations for the Idaho Equal Pay Act, Idaho Code section 44-1701 *et seq.* is four years as stated in Idaho Code section 5-224, and the appropriate point of accrual for IEPA wage discrimination claims is when the employee receives each discriminatory paycheck.

JUSTICES BRODY, MOELLER, and ZAHN, and PRO TEM JUSTICE BURDICK CONCUR.

14